463 A.2d 1042

**John F. FISH and Brenda Fish**

v.

**Donald K. GOSNELL, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 1982.

Filed July 1, 1983.

568

570

Richard W. Mutzabaugh, Bradford, for appellant.

John E. Rydesky, Emporium, for appellees.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant alleges numerous trial errors in this appeal from an adverse award in a personal injury action. Finding his contentions without merit, we affirm the lower court's order.

At about 11:00 p.m. on the snowy night of February 13, 1978, appellant's automobile struck appellee's garden tractor head-on as appellee was plowing snow from his driveway near the berm of the highway. The exact locations and speeds of the vehicles were disputed. In the collision, appellee suffered broken bones in the right side of his face, his pelvis, and both legs, and the choke handle of the tractor was imbedded in his abdomen. After seven weeks in casts immobilizing his pelvis and both legs, a subsequent operation to remove the choke handle, and a period of convales-

cence, appellee was diagnosed to have suffered a 30% permanent disability of his legs and a permanent disfigurement of the right side of his face. Upon returning to work, appellee discovered he had lost the ability to duck in or around machinery or to stand for prolonged periods as required by his customary job as a printing press operator and repairer, but he was able to obtain another less strenuous, but nearly equally remunerative, job at a grocery store. On August 5, 1980, he commenced this action in trespass against appellant.[1] Following a trial, at which appellee introduced a witness testifying on the issue of damages who had not been identified in pre-trial discovery, the jury found appellant 80% negligent and appellee 20% negligent in causing the accident, assessed appellee's damages at $80,000, and thus awarded him a net verdict of $64,000.[2] Following denial of post-verdict motions, the lower court entered judgment in favor of appellee on September 14, 1981. Thirty-six days later, on October 20, 1981, during the pendency of this appeal, the lower court molded the verdict to add the 10% per annum pre-award delay damages required by Pa.R.Civ.P. 238.

Appellant contends that the lower court erred in admitting a co-worker's testimony because her identity had not been disclosed in response to interrogatories. We find that the error, if any, was harmless. Although the challenged witness's testimony helped support appellee's damage claim, and may have bolstered his credibility by corroborating some of his testimony, the lower court's finding that the proffered testimony was "rather innocuous" in the context of this trial is well-supported. Expert witnesses had described appellee's actual injuries. Appellee had already testified about his working conditions and ability to perform his printing job. (N.T. at 25–27, 72), and appellant did not dispute the facts asserted, (N.T. at 92–94). The

1. Appellee's medical expenses and certain work-loss benefits had already been paid by his No-fault insurance carrier.

2. Appellee's wife was awarded $2,500, reduced to $2,000, for loss of consortium.

substance of the challenged witness's testimony that appellant was well respected and had good job prospects was already in evidence through appellee's undisputed testimony about his long service, (N.T. at 26), and appellant's eliciting from him that he had resumed the job after the accident at a higher rate of pay, (N.T. at 94). Any prejudice from surprise was minimal. Appellee had disclosed in discovery his intent to call an "employment specialist," and had revealed the name and address of his employer and the nature of his job as a printing press operator and repairer. Although appellee never disclosed the precise identity of this witness as he should have, *see* Pa.R.Civ.P. 4007.4, that the witness was a co-worker rather than the promised specialist did not appreciably burden appellant. Sidebar discussion revealed that appellant was aware that the witness was appellee's aunt, and appellant was able to use this relationship on cross-examination. (N.T. at 131–32). In addition, the court found no indication of bad faith or attempt to mislead in presentation of this witness. Even under a strict reading of the procedural rules, holding that the presentation of a non-disclosed witness was *per se* error under Pa.R.Civ.P. 4019(i), a new trial would not be warranted here. The erroneous admission of evidence is not grounds for a new trial if the particular facts it tended to prove were clearly established by other competent evidence, especially if the facts were not disputed, *see Coons v. McKees Rocks Boro.*, 243 Pa. 340, 90 A. 141 (1914); *Wagner v. Wagner*, 158 Pa.Superior Ct. 93, 43 A.2d 912 (1945); 9 Standard Pennsylvania Practice, Ch. 40, § 198 (1962 & Supp.1981), or when no harm or prejudice results, *see Kolb v. Hess*, 227 Pa.Superior Ct. 603, 323 A.2d 217 (1974). Moreover, considering the jury's findings on liability and the other evidence of damages, it is apparent that this allegedly erroneously admitted evidence of damages did not unduly influence its award. *See Herb v. Hallowell*, 304 Pa. 128, 154 A. 582 (1931). Accordingly, we affirm the lower court's decision on this point.

 Appellant contends next that the lower court erred in permitting appellee to answer, over objection, a leading question posed him on direct examination. We hold the lower court acted within its discretion in permitting an answer to the question. The rule proscribing leading questions by the party calling a witness "is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical considerations of who called the witness. It is a discretion not susceptible of exactly defined limits beforehand, but to be exercised in the interests of justice and a fair trial under the circumstances as they arise." *Commonwealth v. Gurreri*, 197 Pa.Superior Ct. 329, 332–33, 178 A.2d 808, 809 (1962). *Accord, Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963). Absent a clear abuse of the trial judge's discretion in controlling the inquiry of witnesses, a reviewing court will not find reversible error. *Commonwealth v. Reidenbaugh*, 282 Pa. Superior Ct. 300, 422 A.2d 1126 (1980). The contested testimony is as follows:

[Appellee's Counsel]: Now, have you tried sitting down to rest your legs?

[Appellant's Counsel]: Objection, Your Honor, this is becoming very leading.

The Court: Overruled.

[Appellee]: Yes.

N.T. at 74. Permitting this isolated leading question after a discussion of appellee's employment circumstances was within the lower court's discretion, and, accordingly, we will not disturb its decision.

Appellant contends that the lower court erred in refusing to instruct the jury on assumption of risk. We find, however, that such an instruction was unnecessary. The facts most favorable to an assumption of risk charge are as follows: While plowing snow, appellee partially obstructed the left side of the highway with his garden tractor. He saw appellant's headlights bearing down upon him as they became visible around the bend 600–800 feet away. Think-

ing the car belonged to a practical jokester friend, appellee proceeded without trying to evade the oncoming car, hoping that it would avoid him. The car did not, and appellee was severely injured in the resulting collision. (N.T. at 95).

■■■■ Assumption of risk may be implied from a plaintiff's conduct under the following standard:

[A] plaintiff who fully understands a risk of harm to himself ... caused by the defendant's conduct ... and who nevertheless voluntarily choses to enter or remain ... within the area of that risk, under circumstances that manifest a willingness to accept it, is not entitled to recover for harm within that risk.

Restatement (Second) of Torts, § 496C (1965). *Accord, Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981) (plurality opinion); *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978). Previously, in cases where plaintiffs encountered traffic disregarding its dangers, our courts often seemingly equated assumption of risk with contributory negligence by defining one theory in terms of the other. For instance, in *Kaplan v. Philadelphia Transportation Co.*, 404 Pa. 147, 171 A.2d 166 (1961), our Supreme Court denied recovery to a plaintiff, who upon looking out from behind a parked truck was instantly struck by a trackless trolley, with the following reasoning:

[D]ecedent was guilty of *negligence* as a matter of law. He chose a place of danger in preference to one of comparative safety and by reason of his position was injured. His so doing amounted to an *assumed risk* and recovery must be denied.

*Id.*, 404 Pa. at 151, 171 A.2d at 168 (emphasis added).[3] Blurring the distinction between contributory negligence

3. *See DeFonde v. Keystone Valley Coal Co.*, 386 Pa. 433, 434, 126 A.2d 439, 439–440 (1956) (decedent walked between two parked vehicles) ("where a person ... *voluntarily choses* [a dangerous route over a safe one] ... he is guilty of *contributory negligence* "); *Mastrocinque v. McCann*, 385 Pa. 33, 36, 122 A.2d 55, 56 (1956) (decedent standing behind parked car on roadway at night) (contributory negligence bars recovery because plaintiff "chose place of danger in preference to one

and assumption of the risk may have been acceptable before comparative negligence, as both contributory negligence and assumption of risk would wholly bar recovery. However, since the advent of comparative negligence, 42 Pa.C. S.A. § 7102 (effective September 7, 1976), careful attention to the nature of the judicially created assumption of risk defense has become essential to ensuring the proper outcome of a case, for assumption of risk wholly bars recovery, whereas comparative negligence permits even a 50% negligent plaintiff to recover. *E.g.*, *Bortner v. Gladfelter*, 302 Pa.Superior Ct. 492, 448 A.2d 1386 (1982). We are satisfied that in enacting the comparative negligence statute our legislature did not intend to wholly abolish the assumption of risk defense. *Rutter v. Northeastern Beaver County School District, supra* 496 Pa. at 617 n. 2, 437 A.2d at 1211 n. 2 (ROBERTS, J., dissenting). However, neither did it intend to extend application of the assumption of risk defense in cases that have been traditionally, evaluated primarily according to contributory negligence principles. *Carrender v. Fitterer*, 310 Pa.Superior Ct. 433, 456 A.2d 1013 (1983). In cases where plaintiffs encounter traffic, our courts have most often, and properly, relied upon contributory negligence analysis, *see, e.g., Trayer v. King*, 241 Pa.Superior Ct. 86, 359 A.2d 800 (1976); *Hollern v. Verhovsek*, 220 Pa.Superior Ct. 343, 287 A.2d 145 (1971), referring to assumption of risk as merely a factor in the negligence analysis rather than a separate defense, *see, e.g., Kaplan v. Philadelphia Transportation Co., supra; DeFonde v. Keystone Valley Coal Co.*, 386 Pa. 433, 126 A.2d 439 (1956).

▬▬ Such an approach is proper because of the nature of the defense. Assumption of risk and comparative negli-

of comparative safety.... His so doing amounted to an *assumed risk* "); *Earll v. Wichser*, 346 Pa. 357, 358, 30 A.2d 803, 803–804 (1943) (plaintiff jolted from defendant's pick-up truck tailgate) ("we turn to the question of plaintiff's *contributory negligence* ... [plaintiff's] act in placing himself in such a dangerous position amounts to an *assumption of the risk* and he cannot recover"). *See also Hill v. Richards*, 406 Pa. 452, 178 A.2d 705 (1962); *Joyce v. Quinn*, 204 Pa.Superior Ct. 580, 205 A.2d 611 (1964).

gence may sometimes overlap because certain conduct may exhibit all the elements of both. *See Bortner v. Gladfelter, supra; Takach v. B.M. Root Co.,* 279 Pa.Superior Ct. 167, 420 A.2d 1084 (1980); *Weaver v. Clabaugh,* 255 Pa.Superior Ct. 532, 388 A.2d 1094 (1978). However, assumption of risk as a separate defense has a distinct character. All voluntary risk-taking that can be described by the ambiguous phrase "assuming risk" does not constitute the defense. *Rutter v. Northeastern Beaver County School District, supra* 496 Pa. at 612–13, 437 A.2d at 1209, citing *Tiller v. Atlantic Coast Line Railroad Co.,* 318 U.S. 54, 72, 63 S.Ct. 444, 453, 87 L.Ed. 610 (1943) (Frankfurter, J., concurring). Rather, all elements of the defense—that the plaintiff "fully understands" the specific risk, "voluntarily chooses" to encounter it, and "under circumstances that manifest a willingness to accept it"—must be "demonstrat[ed] ... in fact" before the theory will be submitted to the jury. *Marinelli v. Montour R.R. Co.,* 278 Pa.Superior Ct. 403, 416–17, 420 A.2d 603, 610 (1980) (decedent's riding on top of truck that passed under low bridge not support assumption of risk instruction).[4]

A particularly difficult element of the defense is in defining "circumstances that manifest a willingness to accept" the risk. Restatement (Second) of Torts, § 496C. The nature and purposes of the defense help courts in defining these circumstances. Assumption of risk "reflects the individualism of the common law" which allows people to make their own choices and does not undertake to "protect [them] from the effects of [their] own ... voluntary actions." *Rutter v. Northeastern Beaver County*

---

**4.** *See McDevitt v. Terminal Warehouse Co.,* 304 Pa.Superior Ct. 438, 450 A.2d 991 (1982) (plaintiff guiding truck in dark not assume specific risk of stepping in hole and being struck by truck); *Fahringer v. Rinehimer,* 283 Pa.Superior Ct. 93, 423 A.2d 731 (1980) (plaintiff pulling block from front of wheels of stuck cement truck not assume specific risk that truck would unexpectedly be put in forward gear); *Love v. Harrisburg Coca-Cola Bottling Co.,* 273 Pa.Superior Ct. 210, 417 A.2d 242 (1979) (plaintiff not fully understand and choose risk of ladder slipping on wet floor when uncontradicted testimony showed floor was dry when he ascended).

*School District, supra* 496 Pa. at 606–607, 437 A.2d at 1206.

Thus, the essence of the assumption of risk defense is not fault but that the plaintiff changed his position. Before the injury, he intelligently acquiesced in a known danger and abandoned his right to complain, but afterwards, seeks to assert the claim he had waived. *See Jones v. Three Rivers Management Corp., supra.* To imply such waiver from conduct and circumstances alone can be a source of "misapprehension and confusion" and "frequent misapplication." W. Prosser, Law of Torts, at 445 (4th ed. 1971). Aware of this danger, our Court announced, even before comparative negligence, that it would take a "restrictive attitude" toward the circumstances from which the assumption of risk defense might be implied. *Fahringer v. Rinehimer,* 283 Pa.Superior Ct. 93, 98–99, 423 A.2d 731, 734 (1980). Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of risk. Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain, but rather is better judged by its reasonableness, that is, by negligence principles. *See Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44, 155 A.2d 90 (1959); Annot., Distinction between Assumption of Risk and Contributory Negligence, 82 A.L.R.2d 1218 (1962, Supps. 1979 & 1982). Thus, in cases of plaintiffs encountering traffic, our courts have most often treated "assuming risk" merely as a factor in the negligence analysis rather than as a separate defense. *E.g., Kaplan v. Philadelphia Transportation Co., supra; DeFonde v. Keystone Valley Coal Co., supra.* As Justice Holmes noted:

[T]he practical difference [between assumption of risk and contributory negligence] is in the degree of proximity to the particular harm. The preliminary conduct of getting into a dangerous employment or relation is said to be accompanied by assumption of the risk. The act more

immediately leading to a specific accident is called negligent.

*Schlemmer v. Buffalo, Rochester & Pittsburg Ry.*, 205 U.S. 1, 27 S.Ct. 407, 51 L.Ed. 681 (1907) (construing Pennsylvania law). Prosser explains that the negligent encountering of traffic is not assumption of risk by this example, "A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at high speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to avoid running him down." W. *Prosser, supra* at 445. *Accord, Hildebrand v. Minyard*, 16 Ariz.App. 583, 494 P.2d 1328 (1972).

■ Appellee, like the pedestrian who steps out in the middle of the block, voluntarily placed himself in a dangerous situation by partially obstructing traffic with his snowplow. He may have been foolhardy and negligent, but he cannot be said to have consented that oncoming drivers abandon their duty of care to keep their vehicles under sufficient control in the snowy conditions to avoid a collision. In the moments when appellant's car approached him, appellee made another choice. He refrained from evasive acts because he thought the car bearing down on him belonged to a practical joking friend. In those moments he had become aware of appellant's specific actions. Yet these last minute decisions, of the sort that might be heavily influenced by an erroneous guess as to the speed or path of the oncoming car, are not those that indicate an intelligent acquiescence to the possible life-or-limb consequences. They are not made "under circumstances that manifest a willingness to accept" the risk. Restatement (Second) of Torts, § 496C. Thus, our law does not require that these facts be submitted to a jury as an assumption of risk defense. Rather, appellee's entire course of conduct is properly analyzed as possible negligence, and was thus correctly submitted to the jury as possible comparative negligence. Accordingly, we affirm the lower court's refusing the assumption of risk instruction.

 Appellant contends next that the lower court's instruction to the jury on comparative negligence was insufficient. This contention lacks merit. A trial judge has wide latitude in charging the jury, and may use any particular language provided the language used adequately and fully conveys to the jury the law applicable to the facts of the case. *Albert v. Alter*, 252 Pa.Superior Ct. 203, 381 A.2d 459 (1977); *Churchill v. Eakin*, 233 Pa.Superior Ct. 466, 335 A.2d 378 (1975). The lower court's charge here adequately explained comparative negligence. *See* 42 Pa.C.S.A. § 7102. Even though the court did not specifically mention plaintiff's duty of care, it explained the law concerning negligence and causation and then properly instructed the jury to determine appellant's causal negligence, if any, appellee's causal negligence, if any, and then to apportion the combined causal negligence between the parties. This instruction was certainly adequate.

 Appellant contends that the assured clear distance ahead rule was inapplicable, and thus the lower court erred in charging the jury on it. We find that the rule was applicable, and the court's instruction proper. Under the assured clear distance ahead rule, a driver must keep his vehicle under such control that he can always stop within the distance that he can clearly see, a distance that will vary according to the visibility and the attending circumstances. *Koelle v. Philadelphia Electric Co.*, 443 Pa. 35, 277 A.2d 350 (1971); *Unangst v. Whitehouse*, 235 Pa.Superior Ct. 458, 344 A.2d 695 (1975). At night, the driver must be able to stop within the range of his headlights. *Stano v. Rearick*, 441 Pa. 72, 271 A.2d 251 (1970). Attending circumstances that the driver must take into account include those that limit his visibility, such as smoke, fog, a hill, or a curve in the road, *see, e.g., Farbacher v. Frank*, 228 Pa.Superior Ct. 35, 323 A.2d 233 (1974) (crest of hill), as well as those that affect his ability to stop, such as wet, icy, or slippery road surfaces, *see, e.g., Brown v. Schriver*, 254 Pa.Superior Ct. 468, 386 A.2d 45 (1978) (loose gravel). Exceptions that make the rule inapplicable may exist if the

obstacle is so camouflaged or deceptive in appearance that a reasonably prudent driver would not realize it was there in time to stop, *see Stano v. Rearick, supra* (dirty, unlighted, tractor-trailer stopped at night not necessarily so camouflaged as to make rule inapplicable); *Colonial Trust v. Elmer C. Breuer, Inc.,* 363 Pa. 101, 69 A.2d 126 (1949) (tarpaulin covering coil of spring two-and-one-half feet high and four feet wide could be permissibly inferred by jury to have appeared to be merely a patch in the road), or if a sudden emergency arises, *see Unangst v. Whitehouse, supra* (another vehicle darts into driver's path within the assured clear distance); *Evans v. Reading Co.,* 242 Pa.Superior Ct. 209, 363 A.2d 1234 (1976) (sudden blinding glare of light), or if the obstacle is an oncoming vehicle and not static or essentially static, *see Turner v. Smith,* 237 Pa.Superior Ct. 161, 346 A.2d 806 (1975) (error to charge on assured clear distance rule when obstacle is an oncoming vehicle). *Cf. Unangst v. Whitehouse, supra* (charge may be appropriate if obstacle essentially static). The applicability of the assured clear distance ahead rule is generally a question of fact for the jury, especially if the facts are disputed or dependent upon the credibility of oral testimony. *McElhinny v. Iliff,* 436 Pa. 506, 260 A.2d 739 (1970). Appellant here was driving and failed to stop his car in time to avoid hitting appellee's tractor. He contends, however, that the assured clear distance ahead rule is inapplicable as a matter of law because appellee's garden tractor was unlighted and so deceptive in appearance that appellant could not reasonably have realized its presence in time to have stopped, and because appellee's tractor was moving toward him at the time of the accident. Appellee's tractor, however, had two headlights, and whether it was visible or deceptive in appearance was a question of fact for the jury. The evidence as to whether the tractor was moving, or moving very slowly and thus essentially static at the time of the accident, is conflicting. Accordingly, the lower court properly permitted the jury to resolve the evidentiary dispute and instructed it on the assured clear distance ahead rule.

 Appellant contends the lower court erred in instructing the jury to consider appellee's mental anguish and pain as an element of damages because the only evidence concerned appellee's physical pain. This contention is frivolous. Although a person who suffers only mental injury may be limited regarding his tort remedies, *see Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), there is no doubt that a person bodily injured may recover damages for pain and suffering, and that pain and suffering includes mental as well as physical anguish. D. Dobbs, Remedies, § 8.1 at 544 (1973). Conscious suffering from physical injuries, as well as "anxiety and embarassment" from disfigurement or limitations on activities, are all component parts of a damages claim for pain and suffering. *See Zagari v. Gralka*, 264 Pa.Superior Ct. 239, 399 A.2d 755 (1979). From the evidence here that appellee suffered multiple fractures, immobilization in a cast, an operation to remove the choke lever imbedded in his abdomen, permanent disfigurement of his face, and partial permanent disability in his legs, the jury could certainly infer mental as well as physical pain. The lower court thus properly instructed the jury to consider both aspects.

 Appellant contends that the record contains insufficient evidence for the lower court's instructions that the jury determine appellee's loss of future earnings and consider: the probable increase then decrease of his earnings as he aged, his probable inability to get future jobs as a result of this accident, and his manner of living as it might affect his future productivity and life expectancy. We are satisfied that the record adequately supports these instructions. An injured plaintiff is compensated for the loss in future earning capacity—the lowering of his economic horizons—whether the loss in capacity actually reduces his earnings or not, and it is for the jury to decide the extent and duration of the loss. *McCaffrey v. Schwartz*, 285 Pa. 561, 132 A. 810 (1926), *overruled on other grounds, Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296,

203 A.2d 657 (1964), *overruled on other grounds, Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980). *See* D. Dobbs, *supra,* § 8.1 at 540–41. Our law recognizes that "[n]ormally" the first years of participation in the labor force yield lower earnings while the plaintiff is maturing and acquiring skills, the middle years are dominated by productivity, growth, and higher earnings, while in the later decades, increases, if any, taper off. *Kaczkowski v. Bolubasz, supra,* 491 Pa. at 574 n. 15, 421 A.2d at 1033 n. 15. When instructing the jury on future earning capacity, the trial court should, *inter alia,* remind them that the health, habits, and occupation of the person involved are important factors in determining his life work expectancy. *Brodie v. Philadelphia Transportation Co., supra, overruled on other grounds, Kaczkowski v. Bolubasz, supra.* Proof in support of claims for damages need not conform to the standard of mathematical exactness; although it must permit more than a "mere guess or speculation," it is legally sufficient if it affords the factfinder "a reasonably fair basis for calculation." *Kaczkowski v. Bolubasz, supra* 491 Pa. at 567, 421 A.2d at 1030. (citing authorities). A claim for lost future earning capacity may be submitted to the jury on evidence of the nature of plaintiff's occupation and estimated earnings before the accident, his age, and his injuries and that the injuries are permanent. *See Gary v. Mankamyer,* 485 Pa. 525, 527–29, 403 A.2d 87, 89 (1979) (Where plaintiff submitted evidence tending to show that her physical injury was permanent, and that as a result, she was no longer capable of performing "all of the physical functions necessary for continued employment as a practical nurse," issue of lost earning capacity properly submitted to jury). Here, appellee offered evidence tending to show that the injury to his knees was permanent (N.T. 69), and that as a result, he could no longer perform his job as a print press operator. (N.T. 26–27; 69–72). Either party is entitled, however, to introduce expert or other evidence to establish or refute the actual expected future earning capacity of the particular plaintiff, but is not required to do so. *Kaczkowski v. Bolubasz, supra* 491 Pa. at 579, 421

A.2d at 1036. By these principles, the lower court's instructions on future earnings were accurate and well-founded in the record. Appellee was 29 years old, married, high school educated, and had worked over six years as a printing press operator and repairer. Evidence showed his earnings in the three years prior to the accident. Extensive medical testimony indicated the extent of his injuries and asserted that the accident left him with a partial permanent disability of his legs. It is undisputed that appellee changed jobs after the accident partially because of his injuries. This evidence was sufficient to afford the jury a reasonably fair basis, in light of the normal assumptions and considerations, to estimate whether and to what extent the injuries received in the accident reduced appellee's future earning capacity.

Appellant contends finally that the lower court erred by acting outside the 30-day period after entry of judgment when it modified the verdict to reflect pre-award interest under Pa.R.Civ.P. 238. We find the lower court's action was correct and timely. A lower court may not ordinarily modify an order beyond the thirtieth day after its entry, except as otherwise provided by law. 42 Pa.C.S.A. § 5505; Pa.R.A.P. 1701. For instance, the court may correct obvious or patent mistakes after that 30-day limit has expired. *Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970). And, "after an appeal is taken ... the lower court ... may ... correct formal errors in papers relating to the matter." Pa.R.A.P. 1701(b)(1). Molding a verdict to reflect pre-award interest under Pa.R.Civ.P. 238 is such a correction of a formal error. *Hayden v. Scott Aviation Co.*, 684 F.2d 270 (3d Cir.1982). The rule provides, "[i]n an action seeking monetary relief for bodily injury, death, or property damage ... the court ... shall (1) add to the amount of compensatory damages ... in the verdict of a jury ... damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award...." Pa.R.Civ.P. 238. Rule 238 requires no exercise of discretion, and the computation, after a verdict, is a simple clerical matter, based upon dates and amounts appearing on

the face of record. No factfinding is required or permitted.[5] *See Hayden v. Scott Aviation Co., supra.* Thus, the lower court's adding pre-award interest to the verdict, even though it was done on the thirty-sixth day after entry of judgment, was a permissible correction to a formal error in the court's papers. Pa.R.A.P. 1701. Accordingly, we will not disturb the judgment as corrected by the order of October 20, 1981.

Affirmed.

JOHNSON, J., concurs in result.

---

**5.** We need not here address the exceptional case in which a defendant, during the litigation, raises a legitimate question as to when and whether the cause of action accrued within the year immediately preceding the complaint, or as to whether one of the limited exceptions to the rule applies. *See* Pa.R.Civ.P. 238.