645 A.2d 839

**Stella HARDY, Appellant,**

v.

**SOUTHLAND CORPORATION and Dalstore Properties and Yousef Maan Sheikh.**

Superior Court of Pennsylvania.

Argued January 4, 1994.

Filed June 28, 1994.

Reargument Denied Aug. 25, 1994.

Petition for Allowance of Appeal Denied Dec. 1, 1994.

238

William Derham, Jr., Philadelphia, for appellant.

C.J. Lyford, Philadelphia, for appellees.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order denying appellant's motion for removal of non-suit and granting of a new trial. Appellant raises one issue, whether the court erred in granting non-suit on the basis of the assumption of the risk defense. We reverse and remand.

Appellant brought suit to recover damages for an injury sustained at a 7–Eleven store owned by appellees. According to appellant's testimony she entered appellees' store on a day it had been raining, stepped onto a floor mat located just inside the doorway and, on her first step off the mat, fell on the linoleum floor. Appellant admitted that she had glanced

at the floor immediately prior to stepping onto it and noticed that it appeared wet. Based upon this admission the trial court concluded that appellant had "assumed the risk" of the injury she sustained and, therefore, was precluded from recovery. The court, based upon this position, granted appellees' motion for non-suit. Appellant moved the court for the removal of the non-suit and for a new trial, but was denied relief. This appeal followed.

For some time, it appears, there has been a degree of confusion or difficulty surrounding the application of the assumption of the risk doctrine. This has become even more prevalent since the introduction of comparative negligence concepts. Although the exact status of the assumption of the risk doctrine as valid law in Pennsylvania is less than clear, we believe that a proper application of the doctrine does not allow appellee an affirmative defense under the facts presented here. Thus, we will first provide an analysis of the case under the assumption of the risk doctrine.

In *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983), Judge Hoffman expounded on the nature of the assumption of the risk doctrine. Judge Hoffman wrote:

> assumption of risk as a separate defense has a distinct character. All voluntary risk-taking that can be described by the ambiguous phrase "assuming risk" does not constitute the defense. Rather, all elements of the defense—that the plaintiff "fully understands" the specific risk, "voluntarily chooses" to encounter it, and "under circumstances that manifest a willingness to accept it"—must be "demonstrat[ed] in fact" before the theory will be submitted to the jury.

> A particularly difficult element of the defense is in defining "circumstances that manifest a willingness to accept" the risk. . . . Assumption of the risk "reflects the individualism of the law" which allows people to make their own choices and does not undertake to "protect [them] from the effects of [their] own . . . voluntary actions."

316 Pa.Super. at 577–578, 463 A.2d at 1048–49, (Citations omitted.) According to *Fish v. Gosnell*, the essence of the defense is not fault "but that the plaintiff changed his position. Before the injury, he intelligently acquiesced in a known danger and abandoned his right to complain, but afterwards, seeks to assert the claim he had waived." 316 Pa.Super. at 578, 463 A.2d at 1049. Most applicable to the present case was the following analysis:

> [p]reliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of the risk. Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain, but rather is better judged by its reasonableness, that is, by negligence principles.

> .    .    .    .    .

> [T]he practical difference [between assumption of the risk and contributory negligence] is in the degree of proximity to the particular harm. The preliminary conduct of getting into a dangerous employment or relation is said to be accompanied by assumption of the risk. The act more immediately leading to a specific accident is called negligent.

*Id.*

When this explanation is considered the decisions on, or implicating, assumption of the risk, appear to have a greater consistency. For instance, when a patron at a baseball game or hockey game complains when struck with a foul ball or a flying puck, a classic example of the type two assumption of the risk, (*see* Restatement Second of Torts 496A), the patron is deemed to have assumed the risk of that occurrence and is precluded recovery for the patron knows, or is deemed to know, that such a risk is inherent in attending the game. Similarly, when an individual actually participates in a rather inherently dangerous activity with the one who is sought to be held accountable for the sustaining of injury, the doctrine will

prevent recovery as was found in *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993).[1]

In contrast, in *Fish v. Gosnell,* the court found no reason to give an assumption of the risk charge where a plaintiff, while plowing snow with a garden tractor, was struck head-on by the defendant's automobile. The plaintiff had seen the defendant's headlights approaching but did not attempt to evade them as he believed that the approaching car was being driven by a practical jokester friend of his. In *Handschuh v. Albert Development,* 393 Pa.Super. 444, 574 A.2d 693 (1990), we found the denial of an assumption of the risk charge appropriate in a case where a contractor was fatally injured in a ditch collapse. The appellant had argued that the decedent, as a contractor, was aware of the risk of, and consequences of, a ditch collapse and that his failure to completely leave a ditch when a seam in the wall of the ditch developed and a warning was yelled constituted an assumption of the risk of a collapse. We disagreed and concluded the case was appropriately tried under comparative negligence principles.

Considering now the facts of the present case, it appears that the plaintiff entered a 7–Eleven store on a day when it had been raining. When appellant had stepped inside the store she stepped on a small section of carpeting. On her first step off the carpeting and onto the linoleum floor she slipped on the floor and fell. It appears that the linoleum surface was wet and precipitated the fall. The testimony also establishes that just prior to stepping onto the linoleum appellant had glanced at the floor and noticed that it was wet. However, the testimony does not establish that appellant ever interrupted her normal walking gait, noticed the condition of the floor, pondered it for a moment and then proceeded anyway realiz-

1. In *Howell,* guests at a party expressed interest in firing a fireworks cannon owned by the host. The appellant there actually provided the gunpowder used to set the cannon off and was struck with a projectile or piece of the cannon when the cannon exploded. The appellant, by providing the gunpowder and engaging in the firing of the cannon, was deemed to have assumed the risk of such an obviously dangerous endeavor and was, therefore, precluded from recovering against the homeowner/host.

ing that it may be slippery. Indeed, when asked how much time elapsed between the time she glanced at the floor and the time she stepped on it, appellant stated "I had already stepped out. I didn't notice and stand there and watch the floor. I just proceeded to fall." R. 53A. Analyzed from this standpoint, we do not believe appellant assumed a known risk under circumstances that indicates an abandonment of a right to complain. The "preliminary conduct" of walking into the store is not such that should be regarded as accompanied with assuming the risk of a fall on a slippery floor. Appellant did not become aware of the "known danger" until just before she took the step which caused her injury. Indeed, in order to avoid the danger it might have been necessary for her to stop herself in mid-stride. In our opinion these are not circumstances to which the doctrine should apply as an affirmative defense. Rather, these circumstances invite comparison of negligence under applicable law.

As mentioned above, the exact status of the assumption of the risk doctrine is somewhat uncertain in light of recent decisions of our Supreme Court. In *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981), the doctrine narrowly escaped banishment from the repertoire of defense lawyers when a plurality of our Supreme Court sought to abolish the doctrine in most cases. In fact, the lead opinion in that case actually purports to abolish the doctrine but failed, by one vote, to garner a clear majority of the Court. The reasoning set forth for the plurality's position was the complexity of analysis in assumption of the risk cases and the fact that the policies served by the doctrine were adequately served by other aspects of negligence law, including contributory negligence and duty analyses.

Two years later, in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), the court considered a slip and fall case occurring on a patch of ice in a parking lot of a chiropractor's parking lot. There the appellee was aware she had parked next to a patch of ice prior to alighting from her vehicle and also that there were several other spots available that were free of ice. Nevertheless, rather than moving to another

parking spot, appellee exited the vehicle and traversed the icy area. On her return to her vehicle she slipped and fell, sustaining injury. In discussing the voluntary encountering of a known and obvious danger the court opined:

[i]t is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

503 Pa. 187, 469 A.2d at 125. However, *Carrender* essentially sidestepped the doctrine of assumption of the risk, at least as an affirmative defense, instead interjecting it into a focus on the duty side of the negligence equation. Thus, the Court provided no additional hint as to the status or favor of assumption of the risk as an affirmative defense.

Most recently, in the case of *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), two members of our Supreme Court, the two dissenters, indicated a belief that the doctrine of assumption of the risk no longer has any place in our law and stated they would eliminate it as an affirmative defense altogether. Two other Justices, which comprised the lead opinion in the case, favored a modification of the doctrine while two others concurred in result only and did not express any opinion on the vitality of the doctrine.

Footnote 10 of the lead *Howell* opinion states that "this holding . . ., in essence, abolishes assumption of the risk as an affirmative defense, . . ." but excepts cases of express assumption of the risk, cases brought under a strict liability theory, or cases where the assumption of the risk is specifically preserved by statute. However, rather than a true abolition of the doctrine, the lead opinion really retains the doctrine, but "in a modified form." The *Howell* decision purports to retain the doctrine as a part of a duty analysis. Under *Howell,* the trial court is obligated to review the factual scenario and determine whether "[u]nder those facts, . . . the defendant, as a matter of law, owed plaintiff no duty of care." 163, 620 A.2d

at 1113. Of course, this position is not entirely new either. In *Rutter*, it was noted that cases which had evoked assumption of the risk to deny a plaintiff's recovery could have been decided in similar fashion by "the court's determination that, as a matter of law, defendant owed plaintiff no duty, ..." 496 Pa. 612, 437 A.2d at 1209.

In light of the various pronouncements set forth above, the doctrine of assumption of the risk, at least as an affirmative defense, must be regarded as being in a rather precarious and confusing state of being. Despite two lead opinions purporting to abolish assumption of the risk, neither pronouncement gained a majority of the Court. Thus, in effect, the doctrine has not been formally abolished in Pennsylvania. However, with two votes to abolish it, and two votes to modify its application, it cannot be argued that its original applications are now in favor with a majority of the court. Thus we are presented with an interesting question of *stare decisis*, that being, whether a legal position which clearly cannot command a majority of the Supreme Court should be applied despite the absence of an outright reversal.

The Third Circuit Court of Appeals recently was faced with such a situation in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 947 F.2d 682 (3rd Cir.1991). In that case, a point of controversy revolved around which standard of scrutiny governed a review of abortion provisions. The court stated that at times a Supreme Court's decision revealed that an earlier established standard no longer commanded the allegiance of a majority of the Justices. Consequently, a lower court was obligated to determine whether to apply the old standard, or, if not, which standard should apply. The Court found guidance in the United States Supreme Court's decision of *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), a case involving obscenity. After reviewing *Marks* and the Court's discussion of what law applied in the case of a splintered Court, the Third Circuit concluded that "a legal standard endorsed by the Court ceases to be the law of the land when a majority of the Court in a subsequent case declines to apply it, even if the majority is composed of

Justices who disagree on what the proper standard should be." *Id.*, 947 F.2d at 693. In such situations, it was determined, the law to be applied was that which the Justices concur upon on the narrowest grounds. *Id.*

Applying this analysis to the present case, it would seem that we would be obligated to apply the modified assumption of the risk doctrine as set forth in the lead *Howell* opinion. In *Howell,* two Justices favored abolishing assumption of the risk altogether. The two Justices authoring the lead opinion favored a *de facto* modification by incorporating the doctrine into a duty analysis, and two Justices concurred in that result. Thus, the lead opinion would seem to espouse the approach most narrow in scope that can gain at least a concurrence of the majority of the Court.

Applying *Howell* to the present case, however, leads us to the very same conclusion we reached under the doctrine itself. *Howell* states the trial court is obligated to review the factual scenario and determine whether "[u]nder those facts, ... the defendant, as a matter of law, owed plaintiff no duty of care." 533 Pa. 163, 620 A.2d at 1113. Looked at from this point of view we are obligated to determine whether a retail store has a duty to its patrons to keep its floors safe for their passage. Were we to uphold the trial court's decision here, the message we would apparently send to merchants via this opinion is that they have no duty to keep their floors dry, or, for that matter, free from other dangers, as long as the condition is noticeable to customers a split second before encountering it. Ostensibly then, a merchant would never have to expend energy to keep a floor free of water or slippery substances as long as one of those handy little yellow cones imprinted with the words "Caution. Wet Floor." is conspicuously displayed. Somehow this does not appear to be a sound balancing of policy interests in the current legal context, nor does it seem to encompass the policy behind assumption of the risk in the first instance.

Nor do we believe that under the circumstances presented here, a merchant can be said to have no duty to keep its floors dry or otherwise safe for its patrons to walk upon. A merchant invites the public to come into its store so that the

merchant can make a profit. The obligation to keep its floors safe is well recognized.

For the above reasons, we reverse the order appealed from and remand for a new trial.

KELLY, J., concurs in the result.