**Bang v. Philadelphia Zoo**

C.P., Philadelphia County, no. CC-344-92.

*Alexis L. Barbieri,* for plaintiff.
*Richard W. Hollstein* and *Thomas J. Cole,* for defendants.

HILL, *J.,* November 16, 1994—

I. PROCEDURAL HISTORY AND OVERVIEW

This is a negligence action brought by plaintiff Santosh G. Bang against defendants Philadelphia Zoo and The Zoological Society of Philadelphia. The action arose from an accident which occurred on March 21, 1990, when plaintiff sustained injury after climbing and falling from the top of a 12 foot tall smooth stone elephant statue near the entrance to the Philadelphia Zoo. The jury trial was bifurcated for a determination of liability and then, if appropriate, a determination of damages.

A nonsuit was granted on May 25, 1994 following the close of plaintiff's case on the liability segment of the bifurcated trial.[1] The nonsuit was granted because the jury, after considering the facts and all reasonable inferences in the light most favorable to plaintiff, could not have reasonably concluded that defendants breached a duty of care to plaintiff. The court determined that defendants did not have a duty to warn or protect plaintiff from the danger associated with climbing a 12 foot tall statue because it was an obvious danger and also because plaintiff assumed the risk of injury.

---

1. Since defendants did not plan to offer any evidence (N.T. II, 47), the nonsuit granted by the court was in effect a directed verdict.

## II. FACTS

After reviewing all the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, the court finds that plaintiff, a 30 year old male, visited the Philadelphia Zoo on March 21, 1990, a sunny, dry day, with his friend Ellen Kenny and her two children. (N.T. I, 48, 49, 68.) Plaintiff is a college graduate in possession of all his faculties. (N.T. I, 47, 66, 67.)

As plaintiff was leaving the zoo at approximately 5 p.m., he decided to climb to the top of a 12 foot tall smooth stone elephant to have his picture taken for his friend's children. (Ex. P1, N.T. I, 50, 58, 59, 65, 75.) The large elephant statue stands next to a 4 1/2 foot baby elephant. The entire statue is surrounded by a bed of mulch and a low wood frame. (Ex. P1-P5, N.T. I, 57.)

Plaintiff did not allow his friend's children to climb to the top of the large elephant because they were too little. (N.T. I, 58.) Prior to climbing the statue, plaintiff walked entirely around it looking for warning signs and then waited for two or three teenagers to climb down from the top of it. (N.T. I, 57, 58, 59, 68.) It was obvious to plaintiff that the statue was made of stone. (N.T. I, 71.) Plaintiff also observed that the statue lacked safety devices to aid climbing. (N.T. I, 69.)

Plaintiff stepped on the large elephant's trunk, which partially hangs over the baby elephant, and onto the back of the baby elephant. (N.T. I, 70.) Once there, plaintiff used the large elephant's ear to pull himself to the top. (N.T. I, 59, 70.) Plaintiff straddled the elephant but almost immediately lost his balance on the slippery

surface. (N.T. I, 59, 71.) In an attempt to minimize a fall, plaintiff started to get down but then lost his balance and fell, sustaining injury to his feet. (N.T. I, 60, 64.)

While the zoo traditionally permitted customers to have their pictures taken on the small elephant (N.T. I, 90, 94), zoo employees customarily told patrons to get down from the large elephant statue when they saw visitors climbing on it (N.T. I, 90, 91, 94, 95); the zoo did not take other measures, such as the placement of warning signs or fencing, to keep people from climbing on the large elephant. (N.T. I, 91.) It can be reasonably inferred that employees of the zoo knew that it could be dangerous to climb the large elephant statue. On the date of the accident, one guard was available to patrol the 42 acres of the zoo. (N.T. I, 96.)

Prior to the accident, defendants had declined to accept recommendations from its security office to make a photo opportunity of the baby elephant by planting trees around the statues and putting a fence and guards around them in order to charge patrons to have their pictures taken on top of the baby elephant. (N.T. I, 92.)

When an accident occurred on zoo property, it was standard procedure to forward a report to George Gaines, director of security. (N.T. I, 90, 95.) Mr. Gaines, called as a witness by plaintiff, testified on cross-examination that from the beginning of his employment as director of security on January 1, 1986 until the date of the accident on March 21, 1990, he was not aware of any incidents concerning a fall from the top of the large elephant statue. (N.T. I, 95.) Plaintiff failed to present evidence that prior to Mr. Gaines' tenure anyone had ever sustained injury by falling off any part of the elephant statue.

# III. DID DEFENDANTS BREACH A DUTY OF CARE TO PLAINTIFF?

A compulsory nonsuit is proper where the jury, after reviewing the evidence and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established. *Brock v. Owens,* 367 Pa. Super. 324, 328, 532 A.2d 1168, 1170 (1987); *Mazza v. Mattiace,* 284 Pa. Super. 273, 277, 425 A.2d 809, 811-12 (1981).

In a cause of action for negligence, the plaintiff must establish the existence of a duty, breach of that duty, a causal relationship between the breach and complained of injury, and actual loss or damage. *Cipriani v. Sun Pipe Line Co.,* 393 Pa. Super. 471, 483, 574 A.2d 706, 712 (1990); *Keck v. Doughman,* 392 Pa. Super. 127, 131, 572 A.2d 724, 727 (1990). The issue here is whether defendants as a possessor of land breached their duty of care to plaintiff.

## A. *Was Plaintiff a Trespasser or Business Invitee While Atop the Large Elephant Statue?*

The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee. *Carrender v. Fitterer,* 503 Pa. 178, 184, 469 A.2d 120, 123 (1983). While defendants concede that plaintiff was a business invitee of defendants as to those areas included within the scope of the invitation, it argues that plaintiff was a trespasser when on the large elephant and that as such its only duty was to refrain from willful or wanton conduct which would cause him injury, citing *Dudley v. USX Corporation,* 414 Pa. Super. 160, 172, 606 A.2d 916, 921-22 (1992).

One who is a business visitor upon entering a premises may become a gratuitous licensee or a trespasser as to other portions, with the rights and duties of the parties varying with each change in status. *Parsons v. Drake,* 347 Pa. 247, 251-52, 32 A.2d 27, 29 (1943). Pennsylvania has utilized section 332 of the Restatement (Second) of Torts in determining whether someone is a business invitee as opposed to a trespasser or gratuitous licensee.[2] *Id.* at 250, 32 A.2d at 29.

A visitor is an invitee only when on that part of the land to which his invitation extends. The purpose for which the land is held open is of great importance in this determination. Restatement (Second) of Torts §332(3) cmt. 1 (1965). The purpose for which the public is admitted to the zoo is primarily to see the animals that are housed therein. It is not necessary to climb to the top of the 12 foot tall elephant statue in order to see the animals. In fact, plaintiff's admitted purpose in climbing the statue was not to see the animals, but to have his picture taken.

The fact that the zoo knew that invitees in general climbed the large elephant is not enough in itself to bring such places within the area of invitation unless the visitor is reasonably led to believe that he was invited to do this. *Id.* Since the zoo permitted customers to climb the baby elephant in close proximity to the large elephant, it is possible that a jury could find that plaintiff was reasonably led to believe that he was invited

2. "A 'licensee' is a person whose entry upon or use of the premises in question is by express or implied permission of the owner or occupier." *Oswald v. Hausman,* 378 Pa. Super. 245, 253-54, 548 A.2d 594, 598 (1988). Since there was no evidence that defendants gave either express or implied permission to plaintiff that he could climb the large statue, plaintiff could not be deemed a gratuitous licensee with respect to the large statue.

to climb the large elephant as well. Accordingly, plaintiff's status will be treated as that of a business invitee.

Pennsylvania has adopted the principles set forth in the Restatement (Second) of Torts §§343 and 343A (1965), which govern the possessor's liability to an invitee "[w]ith respect to conditions on the land which are known to or discoverable by the possessor ...." *Carrender v. Fitterer, supra* at 185, 469 A.2d at 123; *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 351-52, 414 A.2d 100, 103-04 (1980); *Chiricos v. Forest Lakes Council Boy Scouts of America,* 391 Pa. Super. 491, 497, 571 A.2d 474, 476 (1990).

Under the Restatement, *supra,* section 343, a possessor of land is subject to liability only if he:

"(a) Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

"(b) Should expect that they will not discover or realize the danger, or fail to protect themselves against it, and

"(c) Fails to exercise reasonable care to protect them against the danger."

The 12 foot tall elephant statue is not an active danger to anyone since the possibility of falling only manifests itself when someone undertakes to climb on top of it.

## B. *Was the Risk of Harm "Unreasonable?"*

Even if the jury could have reasonably concluded that the zoo would anticipate that a rational adult such as plaintiff might expose himself to the risk of harm by undertaking to climb this passive object, the risk

of harm posed by the condition in question must be "unreasonable." See Restatement, *supra,* section 343(a).

Simply put, was the risk posed by the possibility that a rational adult might suffer harm in climbing the elephant statue "unreasonable" because it was not fenced or provided with warning signs? Even if the unlikely answer to this question is "yes," the possibility of a fall from the elephant was, to say the least, an obvious danger and a possessor of land is not liable to an invitee for harm caused by a known or obvious danger. See Restatement, *supra,* section 343A(1). In the case of an obvious danger, precautions and warnings are not required on the part of the owner in exercising reasonable care. *Id.* at section 343A(1) cmt. e.

## C. *Was the Danger "Obvious?"*

A danger is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Carrender, supra* at 185, 469 A.2d at 123 (quoting Restatement (Second) of Torts §343A cmt. b); *Berman v. Radnor Rolls Inc.,* 374 Pa. Super. 118, 132, 542 A.2d 525, 531-32 (1988) (quoting Restatement (Second) of Torts §343A cmt. b). The evidence was that plaintiff was a 30 year old college graduate with normal perception, intelligence and judgment.

While "the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Carrender, supra* at 186, 469 A.2d at 124; *Commonwealth v. Harris,* 104 Pa. Commw. 580, 584-85, 522 A.2d 184, 186 (1987).

In the case at bar, plaintiff's act in climbing the elephant was not an impulsive decision because he testified that he walked entirely around this large stone statue for the purpose of inspecting it for warning signs before making the first of several stages of a deliberate ascent. Before climbing the statue, plaintiff knew that it was not equipped with handholds or other climbing aids and that it was made of stone and surrounded by a bed of mulch and wood. Plaintiff would have to have been blind not to have realized that the body of the elephant was smooth (see photographs of the elephant— Ex. P1-P5) and that it was 12 feet tall or about twice his own height. In the opinion of the court, reasonable minds could not differ in concluding that the condition of the statue and the risk of climbing and possibly falling from it was obvious and would have been recognized as such by a reasonable person.

Pennsylvania courts have long recognized that even children can appreciate the fear of falling:

"[N]o danger is more commonly realized or risk appreciated, even by children, than that of falling. Consciousness of the force of gravity results almost from animal instinct. Certainly, a normal child merely 7 years of age—indeed any child old enough to be a child at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt...." *Himes v. New Enterprise Stone & Lime Co. Inc.,* 399 Pa. Super. 301, 308-09, 582 A.2d 353, 357 (1990) (quoting *McHugh v. Reading Company,* 346 Pa. 266, 269, 30 A.2d 122, 123 (1943)).

If a 7 year old child can appreciate the dangers of falling from an elevated structure, then certainly a 30 year old adult with all his faculties must have appreciated the danger here. Would plaintiff have every apple or-

chard in Pennsylvania put up signs warning "Adults: it is dangerous to climb these trees!"?

### D. *Should the Zoo Have Anticipated That Plaintiff Would Be Harmed Because His Attention Might Be Distracted While He Climbed the Elephant?*

Even if an invitee encounters a known or obvious danger, a possessor of land may still be liable if the possessor should anticipate the harm despite such knowledge or obviousness. Restatement, *supra,* section 343 A(1). Again, there was no evidence here to suggest that patrons were routinely injured by falling from the top of the large elephant.

A possessor of land has reason to expect harm to the visitor from known or obvious dangers "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id.* at section 343A(1) cmt. f. There is no evidence that plaintiff, intent on reaching the top of the elephant for a photo, had his concentration on the climb diverted by some distraction which defendants should have anticipated. This is not the situation where a workman absorbed by the task at hand steps back and falls through an obvious but unprotected hole.

### E. *The Advantages of Climbing the Elephant For a Snapshot Did Not Outweigh the Risk of Doing So*

A possessor of land has reason to expect harm to the visitor from known or obvious dangers where "the

possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* at section 343A(1) cmt. f. For example, the advantage would outweigh the risk when the only alternative to taking the risk was to forgo employment. *Id.* at section 343A(1) cmt. f, illus. 5. The advantage of climbing a 12 foot tall elephant statue to take a picture clearly does not outweigh the risk of falling from it, especially since plaintiff could have easily and safely posed on the baby elephant or stood in front of the statues. See *e.g., Malinder v. Jenkins Elevator & Machine Co.,* 371 Pa. Super. 414, 425, 538 A.2d 509, 515 (1988) (employee could have used the intercom system, a nondangerous and reasonable method of calling the freight elevator, rather than poking his head into the elevator shaft).

## IV. DID PLAINTIFF ASSUME THE RISK OF CLIMBING THE ELEPHANT?

In addition to plaintiff's failure to prove breach of duty based on his choice to encounter an obvious danger, defendants did not breach any duty to plaintiff because plaintiff assumed the risk of falling and injury when he climbed atop the 12 foot statue.

In *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), a plurality of the Pennsylvania Supreme Court recognized four types of assumption of the risk:

"(1) Plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection ...

"(2) Plaintiff ... voluntarily enters into some relation with the defendant which he knows to involve the risk and is regarded as ... impliedly agreeing to relieve defendant of responsibility ...

"(3) Plaintiff [is] aware of a risk created by the negligence of the defendant [and] proceeds or continues voluntarily to encounter it; and ...

"(4) Plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence." *Id.* at 154 n.2, 620 A.2d at 1108 n.2 (quoting Restatement (Second) of Torts §496A).

The *Howell* lead opinion abolished assumption of the risk as an affirmative defense except in cases of express assumption of the risk (type one), cases brought pursuant to a strict liability theory, and cases in which assumption of risk is specifically preserved by statute. *Id.* at 162 n.10, 620 A.2d at 1113 n.10.

The *Howell* court also held that the fourth type of assumption of the risk has in effect been abolished by the comparative negligence statute, 42 Pa.C.S. §7102 (1978) (amended 1982), which reduces plaintiff's award in proportion to the amount of negligence attributed to plaintiff and which bars recovery if plaintiff was more causally negligent than defendant. *Id.* at 156 n.5, 161, 620 A.2d at 1109 n.5, 1112.

The Supreme Court went on to state that the second and third types of assumption of the risk, where fault is not relevant, still exist in order to preserve the policy that a person may not recover for injuries which he himself has chosen to risk. *Id.* at 161-62, 620 A.2d

at 1112. The case at bar involves the third type of assumption of the risk.

Except for the limited exceptions discussed previously, the *Howell* court stated that "to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as a part of the duty analysis, and not as part of the case to be determined by the jury." *Id.* at 162, 620 A.2d at 1112-13. This has the effect of alleviating the difficulty of instructing a jury on voluntariness, knowledge, and scope of the risk while still preserving the public policy behind the doctrine. *Id.*

In utilizing this approach, the court can determine that no duty exists "only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Id.* at 162, 620 A.2d at 1113. Otherwise the case would be submitted to the jury on a comparative negligence theory. *Id.* at 163, 620 A.2d at 1113.

In *Hardy v. Southland Corporation and Dalstore Properties and Yousef Maan Sheikh,* 435 Pa. Super. 237, 645 A.2d 839 (1994), the Superior Court recently analyzed the splintered decision in *Howell* by first noting that two justices favored abolishing assumption of the risk altogether, two justices authoring the lead opinion favored a de facto modification by incorporating the doctrine into a duty analysis, and two justices concurred in that result. *Id.* at 245, 645 A.2d at 842. The Superior Court applied the modified duty analysis, after first analyzing the case under the assumption of risk doctrine itself, because it stated "the lead opinion would seem

to espouse the approach most narrow in scope that can gain at least a concurrence of the majority of the court." *Id.* at 245, 645 A.2d at 842.

The elements of the assumption of the risk doctrine require that the plaintiff "fully understands" the specific risk, and "voluntarily chooses" to encounter it "under circumstances that manifest a willingness to accept it." *City of Pittsburgh v. Jodzis,* 147 Pa. Commw. 234, 246, 607 A.2d 339, 345 (1992) (quoting *Fish v. Gosnell,* 316 Pa. Super. 565, 575, 463 A.2d 1042, 1047 (1983)) (quoting Restatement (Second) of Torts §496C).

Plaintiff testified that before climbing the large statue it did not occur to him that he might fall and be injured. (N.T. I, 65, 73.) While assumption of the risk involves a subjective awareness of the risk inherent in an activity, the *Howell* plurality recognized that "there are some dangers that are so obvious that they will be held to have been assumed as a matter of law despite assertions of ignorance to the contrary." *Howell, supra.* at 159 n.9, 620 A.2d at 1111 n.9. In *Howell,* the Supreme Court rejected plaintiff's assertion that while he knew it would be dangerous to stand in front of the bore of a cannon, he did not anticipate danger from the cannon itself exploding. *Id.*

In light of previously discussed Pennsylvania precedent which recognizes that no danger is more commonly realized or risk appreciated, even by children, than that of falling, this court must reject as a matter of law plaintiff's claim of ignorance about the danger of falling inherent in climbing a 12 foot tall elephant statue.

"Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity

is a proper basis for implying assumption of the risk, [while] conduct close in time and place to the accident ... does not demonstrate a deliberate abandonment of the right to complain." *Berman, supra* at 137, 542 A.2d at 534 (quoting *Fish v. Gosnell, supra* at 578, 463 A.2d at 1049).

Plaintiff first told his friend's children that they were too little to climb the large elephant statue. Plaintiff himself then walked around the statue looking for warning signs, waited for two or three teenagers to get down from it, and then climbed the statue in various stages prior to reaching the top. These actions in total constituted preliminary and deliberate conduct which, when combined with the court's rejection of plaintiff's claim of ignorance about the danger associated with climbing a 12 foot tall statue, are a proper basis for implying assumption of the risk. *Cf. Hardy, supra* at 242, 645 A.2d at 841 (customer did not become aware of the known danger of a slippery floor until just before she took the step which caused her injury); *Fish v. Gosnell, supra* at 578, 463 A.2d at 1049 (plaintiffs encountering traffic are involved in conduct close in time and place to the accident and therefore Pennsylvania courts have most often treated "assuming risk" merely as a factor in the negligence analysis).

Based on the preceding analysis, reasonable minds could not disagree that the plaintiff deliberately and with the awareness of the risk of falling associated with climbing a 12 foot tall statue nonetheless engaged in this activity which produced his injury. Therefore, the court concludes that defendants, as a matter of law, did not owe plaintiff a duty of care.

If there was ever a factual scenario which could vindicate retention of assumption of the risk as a doctrine,

564

at least in a modified form, it is the one at bar. In essence, this case was about whether a possessor of land has a duty to protect or warn adults who choose to climb stationary, elevated structures which a reasonable person in plaintiff's position would understand pose an obvious danger. To find that such a duty exists would impose an impracticable if not ridiculous burden on a possessor of land, requiring a fence or warning sign around every tree, statue, lamp post, garden arbor or other elevated structure in order to protect an invitee from his own voluntary, deliberate choice to encounter an obvious danger.

## ORDER

And now, November 16, 1994, plaintiff's post-trial motion for relief in the form of the removal of nonsuit and a new trial is hereby denied and judgment is entered in favor of defendants against plaintiff.