620 A.2d 1107

**Daniel P. HOWELL, Appellee,**

v.

**Theodore CLYDE and Pamela Clyde, his wife, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1991.

Decided Feb. 17, 1993.

152

James M. Horne, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., State College, for appellants.

Arthur Cutruzzula, Maurizi & Cutruzzula, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

FLAHERTY, Justice.

Daniel Howell was attending a party at his neighbors' house and was injured when a fireworks cannon owned by the host-neighbors exploded. Howell then sued the neighbors, Theodore and Pamela Clyde, for damages associated with his injuries. The Court of Common Pleas of Clearfield County entered an involuntary nonsuit at the close of plaintiff's evidence, holding that Howell had assumed the risk of injury and was, therefore, barred from recovery. On appeal, Superior Court reversed and remanded for a new trial, 383 Pa.Super. 611, 557 A.2d 419 holding that the trial court could have granted the nonsuit only if Howell's evidence failed to demonstrate that the Clydes breached a duty which they owed to Howell. Further, Superior Court stated that a nonsuit could not be granted on the basis of assumption of risk because the evidence did not show that Howell knew of the existence of the specific risk he was alleged to have taken.

The evidence established that there was conversation at the party concerning a fireworks cannon fabricated by Clyde's grandfather. The guests, including Howell, visually inspected the cannon and expressed an interest in firing it. Howell went to his residence next door to retrieve black powder for use in the cannon, and upon returning with two cans of black powder, Howell held a flashlight while Clyde filled the bore of the cannon half full of black powder. Howell stood back approximately 40 feet while Clyde ignited the cannon, which exploded, injuring Howell.

Clyde petitioned for allowance of appeal from Superior Court's order remanding for a new trial and we granted allocatur.

Ten years ago in *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981), a plurality of this court sought to abolish the doctrine of assumption of risk, except where expressly preserved by statute, or cases of express assumption of risk, or cases brought under 402A

(strict liability). A major concern was that the complexity of analysis in assumption of risk cases makes it extremely difficult to instruct juries, who must decide not only questions related to negligence, but also whether the affirmative defense of assumption of risk operates to bar recovery altogether.[1] Additionally, the plurality stated:

[T]he difficulties of using the term "assumption of risk" outweigh the benefits. The issues should be limited to negligence and contributory negligence. Those are the problems in the case at bar and in all cases brought on a negligence theory. There is no need to introduce further complications. The policy reasons which once existed to preserve the doctrine because of its use in the master-servant cases no longer exist. Furthermore, as is indicated in the *Pennsylvania Suggested Standard Jury Instructions*, "cases which have evoked the doctrine to deny plaintiff's recovery would have produced the same result either by (1) the court's determination that, as a matter of law, defendant owed plaintiff no duty, or, by (2) the jury's determination that plaintiff's own negligent conduct was a substantial factor in bringing about the harm he suffered."

496 Pa. at 613, 437 A.2d 1198.[2] Additionally, the plurality in *Rutter* stated:

1. Whereas the questions of negligence and assumption of risk have traditionally been for the jury, the question of duty, to be discussed later, is for the court.

2. As described in the Restatement Second of Torts, § 496A, the four types of assumption of risk are as follows:
   1. In its simplest form, assumption of risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk. The result is that the defendant, who would otherwise be under a duty to exercise such care, is relieved of that responsibility, and is no longer under any duty to protect the plaintiff. As to such express assumption of risk, see § 496B.
   2. A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park maybe regarded as consenting that the players may proceed with the game

As is indicated in § 496C, comment g, [of the Restatement Second of Torts] the implicit decision to assume the risk can be either reasonable or unreasonable. Since the Pennsylvania comparative negligence statute is designed to apportion liability on the basis of fault, not to bar plaintiff's recovery if it can be shown that he had any degree of fault at all, the absolute bar to plaintiff's recovery effected by the application of types 2 and 3 [of assumption of risk], without regard to the reasonableness of plaintiff's action, tends to frustrate the purpose of the comparative negligence statute.

496 Pa. at 616, n. 6, 437 A.2d at 1210, n. 6.[3] Finally, type 4 of assumption of the risk,[4] where both plaintiff and defendant are negligent to some degree, also frustrates the policies behind our comparative negligence statute, where plaintiff is not barred from recovery unless his own negligence is greater

without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff. As to such implied assumption of risk, see § 496C.
3. In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it. For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case. As to such implied assumption of risk, see § 496C. As to the necessity that the plaintiff's conduct be voluntary, see § 496E.
4. To be distinguished from these three situations is the fourth, in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence. There is thus negligence on the part of both plaintiff and defendant; and the plaintiff is barred from recovery, not only by his implied consent to accept the risk, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own negligence was in part responsible. (See § 467.)

3. See note 2, supra, for a description of types 2 and 3 assumption of risk.

4. See note 2, supra, for a description of type 4 assumption of risk.

than 50%.[5]

Two years after *Rutter* this court again had occasion to address the assumption of risk problem in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). In that case, a plaintiff visiting a medical clinic in order to receive treatment for a back ailment parked in the clinic lot next to a sheet of ice. When she returned to her car, she slipped on the ice and was injured. The evidence disclosed that there were areas in the lot which were not ice-covered and that plaintiff saw the ice next to her car and appreciated the danger that she might fall.[6] Mr. Chief Justice Roberts, writing for a unanimous court, held that where plaintiff's uncontradicted evidence was that the danger posed by the ice was both obvious and known, the defendant reasonably expected that the danger would be avoided. " '[T]he law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee'; *Palenscar v. Michael J. Bobb, Inc.*, 439 Pa. 101, 106–07, 266 A.2d 478, 480, 483 (1970)," *Carrender*, 503 Pa. at 185, 469 A.2d at 123. Plaintiff, therefore, failed to establish a duty essential to a prima facie case of negligence and the defendant clinic was entitled to a judgment notwithstanding the verdict as a matter of law.

In explaining the relationship between assumption of risk and the duty owed an invitee by a possessor of land, Mr. Justice Roberts wrote:

When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and

5. The comparative negligence statute, 42 Pa.C.S. § 7102, provides:
   (a) **General rule.—**
   In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

6. Carrender conceded that her testimony supported a determination that "the danger was either known or obvious to her."

nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks.... By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself.... It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers. See *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978) (operator of baseball park owes no duty to guard against common, frequent, and expected risks of baseball; duty extends only to foreseeable risks not inherent in baseball activity).

503 Pa. at 187–88, 469 at 125.

It should be noted that in *Carrender* there was no question as to whether the injured party knew of the risk. This is significant because one of the problems in an assumption of risk analysis is determining what the plaintiff knew and whether the plaintiff's course of action was voluntarily and deliberately taken.[7] Because there was no question in *Carrender* as to whether the risk was intelligently and voluntarily taken, the court was able to decide that there was no duty as a matter of law.[8]

---

**7.** Judge Hoffman, writing for the Superior Court in *Fish v. Gosnell*, draws a distinction which may often be helpful in distinguishing assumption of risk from negligence:

> Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of risk. Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain [as in an assumption of risk case], but rather is better judged by its reasonableness, that is, by negligence principles.

*Fish v. Gosnell*, 316 Pa.Super. 565, 578, 463 A.2d 1042 (1983).

**8.** The *Carrender* court wrote:

As Mr. Justice Roberts pointed out in *Carrender*, an assumption of risk analysis may, in an appropriate case, be "merely a counterpart" to a duty analysis. In Mr. Justice Roberts' words: "to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers." *Carrender, Id.* In other words, cases like *Carrender* may be analyzed from the point of view of duty, or assumption of risk, or ordinary negligence law, each of which overlaps with the others (i.e., a duty analysis may entail a consideration of assumption of risk and ordinary negligence principles).

The present case may also be analyzed from different perspectives. One approach to the case is that of a duty analysis; a second is that it may be seen as a case involving comparative negligence; a third is that it may be seen as a type 2 or 3 assumption of risk case; a fourth is that it may be seen as a type 4 assumption of risk case.

If the case is viewed from the perspective of a duty analysis, the evidence presented at trial establishes that Howell voluntarily encountered a known risk, thereby obviating any duty which might otherwise have been owed him by Clyde.[9] Under

> Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. See Restatement [Second of Torts], supra, § 328B comments c and d.
>
> *Carrender*, 503 Pa. at 185–86, 469 A.2d at 124.

9. Howell testified as follows:
> Q. And where did you keep it [the gunpowder]?
> A. Above the sill when you walked out into the cellar.
>
> \*    \*    \*    \*    \*    \*
>
> Q. And why did you do that?
> A. We had a woodburner down the cellar. We burnt wood. I figured I didn't want to place two objects like that in the house at the same time with an experimenting five-year-old I had.
> Q. So that you knew there was a danger then from the powder?
> A. Yes.
> Q. And it could explode?
> A. Yes.
> N.T. 53–54. Later Howell testified:

this analysis, the case is controlled by the assumption of risk principle that one who voluntarily undertakes a known risk thereby releases the defendant from any duty of care.

A second analysis is that Howell was negligent in participating in the cannon episode and that his negligence must be compared with Clyde's. 42 Pa.C.S. § 7102 provides:

**(a) General rule.—**

In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

Such a comparison is for the jury, and if Clyde is found to be negligent, Howell will recover at least some proportion of his damages so long as his negligence does not exceed Clyde's.

A third analysis is that this is a type 4 assumption of risk case. Type 4 assumption of risk, as defined by the Restatement, is that in which:

the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory

Q. You appreciated that you shouldn't stand over the top of this cannon or in the perimeter around where things coming out of the top could hit you, you appreciated that, correct?
A. Yes, I did.
Q. And that's why you were back; correct?
A. Yes.
Q. But you had no idea that the cannon would explode and hit you in the groin, did you?
A. No, I didn't.

N.T. 73. In essence, Howell is claiming that although he knew that it would be dangerous to stand in front of the bore of the cannon, he did not anticipate danger from the cannon itself exploding.

The trial court, in granting the nonsuit based on an assumption of risk theory, rejected Howell's claim of ignorance, as a matter of law. On this record, I see no reason to disturb this determination. There are some dangers that are so obvious that they will be held to have been assumed as a matter of law despite assertions of ignorance to the contrary.

negligence. There is thus negligence on the part of both plaintiff and defendant; and the plaintiff is barred from recovery, not only by his implied consent to accept the risk, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own negligence was in part responsible.

Thus, under a type 4 analysis, a plaintiff who negligently assumes a risk is barred from recovery because he was, in part, at fault.

Fourth, the case may be analyzed as a type 2 or 3 assumption of risk case. Those types of assumption of risk are described as follows by the Restatement:

2. A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff. As to such implied assumption of risk, see § 496C.

3. In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it. For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case.

Either type 2 or 3 assumption of risk might apply to the present case. In type 2, Howell may be said to have voluntarily entered into "some relation" with Clyde which he knows to involve risk (i.e., the joint enterprise of firing the cannon); and in type 3, Howell may be said to have voluntarily proceeded to encounter a risk created by Clyde's cannon, seeing the risk of injury as slight, and proceeding cautiously, nonetheless, because of the risk.

■ Which of these analyses should prevail? It is, perhaps, easiest to determine which should not. Assumption of risk type 4 should no longer be a part of the law of Pennsylvania since it plainly conflicts with the legislative policy underlying the comparative negligence act. One's recovery, under the comparative negligence act, is to be reduced by the amount of his own negligence so long as it does not exceed that of the defendant; it is not to be barred, as in assumption of risk type 4, by the mere existence of any amount of negligence. Assumption of risk type 4, therefore, should be abolished.

■ A more complex question is whether assumption of risk types 2 and 3 can co-exist with comparative negligence. Arguably, they cannot. Again, the policy underlying a comparative process is inimical to the policy underlying the complete bar of assumption of risk. I believe, however, that a better approach is to recognize the social utility of assumption of risk and continue its viability, albeit in a modified form.

In assumption of risk types 2 and 3 a plaintiff has voluntarily and intelligently undertaken an activity which he knows to be hazardous in ways which subsequently cause him injury. His choice to undertake this activity may or may not be regarded as negligent. His negligence or lack of negligence, however, is not the operative fact; rather, the operative fact is his voluntary choice to encounter the risk. The theoretical underpinning of these types of assumption of risk is that as a matter of public policy one who chooses to take risks will not then be heard later to complain that he was injured by the risks he chose to take and will not be permitted to seek money damages from those who might otherwise have been liable.

This policy is distinct from the public policy underlying negligence recovery, which is, in essence, that recovery should be permitted on the basis of fault. Fault has no relevance in assumption of risk types 2 and 3.

Assumption of risk types 2 and 3, then, deal with situations not treated by comparative negligence. In comparative negligence, each of the parties must have been negligent: there must be negligence on both sides to compare. In assumption of risk types 2 and 3, the plaintiff may or may not have been negligent in encountering the risk. He is barred from recovery not because of his negligence, but because of the policy that a person may not recover for injuries which he himself has chosen to risk.

 If types 2 and 3 assumption of risk were to be abolished, this idea would be lost. But the policy against recovery for "self-inflicted" injuries remains as viable today as it ever was. Because it is desirable to preserve the public policy behind assumption of risk types 2 and 3, but to the extent possible, remove the difficulties of application of the doctrine and the conflicts which exist with our comparative negligence statute, to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as a part of the duty analysis, and not as part of the case to be determined by the jury.[10] This approach preserves the public policy behind the doctrine while at the same time alleviating the difficulty of instructing a jury on voluntariness, knowledge, and scope of the risk.

Under this approach the court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury. Under those facts, the court would

10. An exception to this holding which, in essence, abolishes assumption of risk as an affirmative defense, is that in cases involving express assumption of risk, or cases brought pursuant to 402A (strict liability theory), or cases in which assumption of risk is specifically preserved by statute, assumption of risk remains a viable affirmative defense.

determine that the defendant, as a matter of law, owed plaintiff no duty of care.

If, on the other hand, the court is not able to make this determination and a nonsuit is denied, then the case would proceed and would be submitted to the jury on a comparative negligence theory. Under this approach, subject to the exceptions set out in footnote 10, assumption of the risk would no longer be part of the jury's deliberations or instructions.

In the case at bar, the Court of Common Pleas was not in error in concluding, as a matter of law, that Howell had assumed the risk of injury. Howell voluntarily participated in a dangerous activity, knowing that the ignition of gunpowder is inherently dangerous and might cause injury to himself or others. Although the court granted the nonsuit on the basis of an assumed risk rather than because of an absence of duty, the analysis, nonetheless, is substantially the same. Since Howell voluntarily assumed the risk of injury, Clyde owed him no duty. It was error, therefore, for Superior Court to remand the case for a new trial.

Order of Superior Court is reversed and the judgment of the Court of Common Pleas of Clearfield County is reinstated.

LARSEN, J., files a concurring opinion joined by PAPADAKOS, J.

NIX, C.J., and ZAPPALA, J., file dissenting opinions.

McDERMOTT, J., did not participate in the decision of this case.

LARSEN, Justice, concurring.

I join in the result only. I think the Opinion Announcing the Judgment of the Court only confuses the doctrine of assumption of risk. When two or more people enter into a joint enterprise, activity, etc., that potentially has a risk, neither owes the other a duty to insure that that risk will not occur.

PAPADAKOS, J., joins in this concurring opinion.

NIX, Chief Justice, dissenting.

Today the majority decides to preserve assumption of the risk as an affirmative defense in negligence cases despite the fact that, for the purposes of this case, the doctrine lost its viability when the General Assembly passed the Comparative Negligence Act. Therefore, I dissent.[1]

The heart of this Commonwealth's Comparative Negligence Act provides that

> [i]n all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S.A. § 7102(a). Assumption of the risk is not expressly mentioned as being affected by this provision. Indeed, nowhere does the Act make such an express statement. Nevertheless, it is clear that the General Assembly contemplated that assumption of the risk would be modified by the Act. This is readily apparent from the subsection addressing the sport of downhill skiing. The relevant portion of that provision states that "[t]he doctrine of voluntary assumption of the risk as it applies to downhill skiing injuries and damages is not modified by subsection[ ] (a)...." 42 Pa.C.S.A. § 7102(c)(2). The very existence of this provision and the unique way in which it is written indicate that the General Assembly recognized that Subsection 7102(a) would have an effect on the assumption of the risk doctrine, at least when the defense is raised in connection with the plaintiff's voluntary conduct.

---

**1.** In *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 617–619, 437 A.2d 1198, 1212–13 (1981) (Nix, C.J., dissenting), I expressed my personal view that assumption of the risk constitutes a viable component of tort law. However, today I am obliged to put aside that view in order to give effect to a legislative judgment expressed by a statute that was not at issue in *Rutter.*

Otherwise, there would be no need to enact Subsection 7102(c).

This Court is obligated to give effect to all the provisions of a statute, 1 Pa.C.S.A. § 1921(a), and the only way to give effect to Subsection (c)(2) of the Comparative Negligence Act is to conclude that Subsection 7102(a) modifies the assumption of the risk defense in some way. The nature of the modification can be determined by analyzing the overall purpose that the Comparative Negligence Act seeks to achieve. In broad terms, the Act expresses three legislative judgments. First, it rejects the idea that a plaintiff who may be partially responsible for his injuries should be precluded from recovery notwithstanding the conduct of others whose negligence contributed to the event. Second, it embraces the idea that any recovery should be reduced in proportion to the plaintiff's share of responsibility for his injuries. Third, it denies recovery only when the plaintiff is more responsible than the defendant(s) for his injuries.

These three legislative judgments are frustrated by the doctrine of assumption of the risk. Assumption of the risk erects a threshold bar to recovery, regardless of how insignificant a role the plaintiff's conduct may have played in producing his injuries. Given the fundamental incompatibility between the Comparative Negligence Act and the doctrine of assumption of risk, there would be no way to achieve what the General Assembly sought to accomplish by passing the Comparative Negligence Act unless this Court concludes that, except in downhill skiing cases, assumption of the risk as an affirmative defense is no longer viable in this Commonwealth.

The majority acknowledges that the policy underlying the Comparative Negligence Act is "inimical" to the policy underlying assumption of the risk. However, instead of yielding to the policy judgment made by the General Assembly, the majority intentionally disregards it in order to embrace what it describes as "a better approach." Specifically, the majority believes that assumption of the risk should be preserved because public policy should never permit courts to entertain suits by persons who are injured as a result of risks they

chose to take and who later seek to recover damages from other parties who might otherwise be liable.

In order to achieve its policy objectives, the majority declares that the pivotal consideration is to be whether the plaintiff's decision to encounter a known risk is voluntary. However, when the General Assembly passed the Comparative Negligence Act, it embraced negligence, not voluntariness, as the touchstone of analysis. As the Act's very name implies, courts and juries are statutorily required to evaluate the plaintiff's conduct in terms of negligence and to compare it with that of the defendant(s).[2] This is an entirely legitimate policy judgment, and this Court is obligated to effectuate that decision. 1 Pa.C.S.A. § 1921(a). The majority's arrogant refusal to do so constitutes a blatant attempt to usurp a legislative power.

Since I would conclude that assumption of the risk cannot be raised as an affirmative defense in this case, I would hold that the trial court's decision to enter an involuntary nonsuit was improper. Accordingly, I would remand this case to the Court of Common Pleas of Clearfield County for a trial with instructions to apply the Commonwealth's Comparative Negligence Act.

ZAPPALA, Justice, dissenting.

I dissent. Until such time as this Court arrives at a clear-cut majority, we will continually muddy the waters in the sensitive areas of both comparative negligence and the assumption of risk, both of which are cornerstones of the negligence law in this Commonwealth.

---

**2.** Of course the plaintiff's voluntariness may be weighed in considering his negligence. However, in that situation, voluntariness is one of several factors, while the majority treats it as the dispositive consideration.