## Long v. Norriton Hydraulics Inc.

C.P. of Montgomery County, no. 87-10439.

LAWRENCE, *J.*, October 19, 1994—On July 22, 1985, plaintiff, Joseph Long, suffered injuries when he slipped and fell on hydraulic fluid leaking from an automobile lift at his workplace. He commenced an action against defendants, Norriton Hydraulics Inc., Globe Hoist Inc., and Dresser-Wayne individually and/or t/a Wayne Division, Dresser Industries Inc. and/or t/a Globe Hoist Inc., contending that they negligently designed, manufactured and/or repaired the lift, that they provided a lift that was unreasonably dangerous in violation of section 402(A) of the Restatement (Second) of Torts and that they breached implied warranties of fitness.

Defendants pled the affirmative defense of assumption of the risk to all counts of plaintiff's complaint. Instantly, defendants moved for summary judgment based upon plaintiff's admission that he knew of the dangers presented by the defective condition of the

automobile lift and voluntarily continued to operate it despite such knowledge. Under separate orders of August 9, 1994, this court granted summary judgment in favor of defendants. Plaintiff now challenges the propriety of the entry of summary judgment as to those counts sounding in negligence and strict liability.

The grant of summary judgment is proper where pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035; *Atkinson v. Haug,* 424 Pa. Super. 406, 622 A.2d 983 (1993).

Plaintiff's deposition testimony established that he was employed for five or six years at the King of Prussia location of Purolator Inc. as an automobile mechanic performing preventive maintenance and repairs of Purolator vehicles. There were three hydraulic lifts in the garage where he worked. (N.T. p. 32.) On the night of the accident, he was doing preventive maintenance on a van. He stated that he had put the van onto a lift which Norriton had allegedly installed and which Purolator had purchased from Globe Hoist.

On that occasion, he was under the van for 15 to 20 minutes when the lift suddenly dropped from its top position. (N.T. p. 56.) As he attempted to get out of the way, he stepped in hydraulic fluid that was on the ground and fell.

He testified without hesitation that there had always been complaints about the lifts for the entire period of his employment at Purolator. (N.T. pp. 33, 37.) He said he never experienced such problems with hydraulic lifts, either before his accident or since. (N.T. p. 40.) Specifically, he claimed the seals of the lifts constantly

leaked, fluid would drip out of the cylinders from the ground and the arms on the lift jumped.

Although the lift never collapsed on him before this incident, he was cognizant that the lifts had dropped on co-workers. (N.T. p. 41.)

"I think the first time we had a major problem with a truck, one of the guys had a truck almost come off the lift one time, and I think for a couple days after that we didn't use the lift, because that scared the heck out of everybody, but then after that it just kind of—we had to get the work done and that was your job.... you kind of lived with it." (N.T. pp. 34-35.)

He stated that the problems with the lifts became part of the overall working conditions.

"You'd be putting away your tools and somebody would put a truck up in the air and all of a sudden it would jump ... it would jump up or jump down. A lot of times you would put it up and few minutes later all of a sudden baboom, it would jump up to the top. I've seen them where they were sitting there and all of a sudden baboom, and they would drop down ... it happened numerous times ... that would make a heck of a noise when it did jump and it would startle you." (N.T. pp. 42-43.)

It occurred often enough that he was on the "lookout" for it to happen. (N.T. p. 47.) He testified that he never knew at what point the lifts would jump or exactly how far they would jump. (N.T. pp. 47-48.) He stated that they experienced these problems with all three lifts but that the lift that collapsed on him had more problems than the other two. (N.T. p. 37.) Complaints would be made and repairs would be performed on the lifts, but the problems always recurred. (N.T. p. 38.)

Furthermore, he stated that the lifts were supposed to be equipped with safety pins that locked the lift in place but that the safety pins did not work on any

of the lifts and might have been missing. (N.T. pp. 53-55.) His testimony was that he had become accustomed to working without them and that he did not even attempt to engage them on the night of the accident.

Just prior to his accident that night he knew that hydraulic fluid was seeping from both cylinders. (N.T. p. 63.) He was not standing in the fluid when the lift dropped but he was aware it was there. (N.T. p. 64.) He said it was normal to have puddles of hydraulic fluid on the work floor near the cylinders. (N.T. pp. 35-37.) Prior to his accident, he had observed puddles of hydraulic fluid more than 20 times. (N.T. p. 36.) He testified that he knew what hydraulic fluid looked like on the ground because it is lighter than motor oil and stains. (N.T. p. 44.) He also stated that he had never slipped on hydraulic fluid before but that he was aware it was slippery and created a hazardous condition. (N.T. pp. 43-44.) The fluid was so slippery that the mechanics were supposed to put a drying agent on it and clean it up. (N.T. p. 44.)

The Pennsylvania Supreme Court has recently analyzed the applicability of the assumption of the risk doctrine to negligence and strict liability claims. In *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993), two justices, comprising the lead opinion in the case, favored a modification of the doctrine. The holding of this opinion, with two other justices concurring in the result, abolished assumption of the risk as an affirmative defense in negligence cases and incorporated the doctrine into a duty analysis. Under *Howell*, the trial court is obligated to review the factual scenario and determine whether, "under those facts, ... the defendant, as a matter of law, owed plaintiff no duty of care." *Id.* at 162-63, 620 A.2d at 1113. The court may determine that no duty exists if reasonable minds could not disagree that

the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity which produced his injury. In strict liability claims, assumption of the risk would be a jury question only if a factual issue exists as to whether a plaintiff assumed the risk.

The *Howell* court, in describing the four types of assumption of the risk as defined by the Restatement (Second) of Torts, §496A, was intent on preserving the public policy behind the following type:

"In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it. For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case." *Howell, supra* at 160, 620 A.2d at 1111-1112.

This analysis applies to the instant case. He knew that hydraulic fluid constantly seeped from all the lifts, puddled on the ground in his work area and generally created a slippery, hazardous condition. He knew that the lifts repeatedly malfunctioned, having fallen on co-workers numerous times. He was aware the safety locks were virtually inoperable, if they were even on the lifts, and that the safety lock was not engaged that night. Moreover, he knew that repairs to the lifts had proven ineffective, and that the lift which he operated

that night had a higher incidence of complaints than the others. We properly found as a matter of law that plaintiff assumed the risk of injury by continuing to operate the lift. No issues of fact remaining for a jury to decide as to an affirmative defense of assumption of the risk, summary judgment was properly granted. See also, *Hardy v. Southland Corp.* (Slip opinion, Pa. Super. Ct., filed June 28, 1994.)

Plaintiff maintains that summary judgment should not have been granted because 1) he did not know that the lift could fall as far as it did, 2) he encountered multiple known and obvious dangers, as opposed to the *Howell* plaintiff, who encountered only one and 3) the lift was defective. None of these create triable issues of fact that would preclude an entry of summary judgment in this case. Plaintiff did not have to know that the lift could fall as far as it did on the night in question. His own testimony reflected that he and his co-workers could not predict when and how far the lift would collapse but that they never doubted the lifts were always in danger of collapsing.

That he encountered two known dangers rather than one is irrelevant when his awareness of the constancy of the two problems and of their interrelationship to each other was clearly established. He is bound by his testimony, which admits of no ambiguity.

As to his last point, that the lift was defective, we certainly cannot deny that there may be evidence of a product defect and/or faulty repair. Whatever defendants' omissions may have been is, regrettably, irrelevant in light of plaintiff's knowledge of the dangers present at his work site.

We respectfully urge that plaintiff's appeal be denied and the court's orders affirmed.