## Battin v. Temple

C.P. of Lycoming County, no. 95-00351.

*Clifford Rieders*, for plaintiffs.
*Dennis Yonkin*, for defendants.

BROWN, *J.*, June 6, 1997—This opinion is written in support of this court's order of January 10, 1997. Defendants Floyd and Shirley Temple[1] raise three issues in their statement of matters complained of on appeal:

---

1. Defendants Gary and Trudy Temple also filed an appeal, but they have withdrawn it. Since they are no longer involved in the

(1) The court erred in not finding that plaintiff Gene L. Battin assumed the risk of his injuries as a matter of law.

(2) The court erred in not instructing and/or charging the jury on the law and/or doctrine of assumption of the risk.

(3) The court erred in its calculation of the delay damages awarded to plaintiff.

The court will address these issues in the order presented by the defendants.

## ASSUMPTION OF THE RISK

Defendants filed a motion for summary judgment and requested a nonsuit claiming plaintiff Gene Battin assumed the risks of his injuries. A court may grant such motions and requests only if the right to relief is clear and free from doubt. If reasonable minds could differ as to the conclusion, the issue may not be decided by the court and the motions should be denied.

In support of their argument that plaintiff Gene Battin assumed the risk of his injuries, defendants relied heavily on the case of *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). In *Carrender*, a woman, visiting a medical clinic, parked in the clinic lot next to an isolated patch of ice. After her appointment, she slipped on the ice and was injured as she was returning to her car. The evidence established that there were areas in the lot which were not ice-covered and that plaintiff saw the ice next to her car and appreciated the danger that she might fall. The court found as a matter of law that plaintiff both knew and appreciated the risks involved *and* voluntarily chose to encounter them.

appeal, the court will refer to Floyd and Shirley Temple simply as defendants.

Some 10 years later when deciding whether to completely abolish the doctrine of assumption of the risk, the Pennsylvania Supreme Court in *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993) indicated that in a case such as the one before us (assumption of the risk types two and/or three) an assumption of the risk analysis is part of the duty analysis to be determined by the court. *Id.* at 161, 620 A.2d at 1112. The operative fact in these types of assumption of the risk is the plaintiff's "voluntary choice to encounter the risk." *Id.* While it was clear in *Carrender* that the plaintiff voluntarily encountered the risk because there were other areas free from ice where she could have parked, it was not clear that Mr. Battin voluntarily encountered the risk. Mr. Battin did not encounter an isolated patch of ice; rather, he was faced with a general icy condition with no alternative route to access the garage located on defendants' property. He needed to have his truck fixed for it to pass inspection and the inspection sticker on the truck was to expire at the end of the month. The garage was open for business on the day of Mr. Battin's accident. Therefore, defendants were inviting the public to traverse their lane despite the icy conditions of which they were aware.

The court believes this case is more akin to *Hardy v. Southland Corp.*, 435 Pa. Super. 237, 645 A.2d 839 (1994). In reversing the trial court's grant of a nonsuit on assumption of the risk, the Pennsylvania Superior Court stated:

"Were we to uphold the trial court's decision here, the message we would apparently send to merchants via this opinion is that they have no duty to keep their floors dry, or, for that matter, free from other dangers, as long as the condition is noticeable to customers a split second before encountering it. Ostensibly then,

a merchant would never have to expend energy to keep a floor free of water or slippery substances as long as one of those handy little yellow cones imprinted with the words 'Caution. Wet floor' is conspicuously displayed. Somehow this does not appear to be a sound balancing of policy interests in the current legal context, nor does it seem to encompass the policy behind assumption of the risk in the first instance.

"Nor do we believe that under the circumstances presented here, a merchant can be said to have no duty to keep its floors dry or otherwise safe for its patrons to walk upon. A merchant invites the public to come into its store so that the merchant can make a profit. The obligation to keep its floors safe is well recognized." *Id.* at 245-46, 645 A.2d 842-43.

Similarly, granting a summary judgment motion or nonsuit in this case would send a message to property owners who hold their land open to the public for businesses located thereon that they do not have to remedy dangerous conditions of ice and/or snow no matter how long those substances have been present.[2] Furthermore, such a finding in this case would nullify the hills and ridges doctrine.

The hills and ridges doctrine is an exception to the general rule in Pennsylvania that a property owner is not liable for a general slippery condition on his sidewalk, driveway or the like. Under the hills and ridges doctrine, a plaintiff may recover if he or she shows that the snow and ice had accumulated in hills and ridges of a size and character to constitute a danger to those traveling thereon; that the property owner had notice of the condition, and it was the dangerous con-

---

2. The testimony at trial was that the icy condition existed for nearly 24 hours after any precipitation ceased.

dition of ice and snow which caused plaintiff to fall. The Superior Court has described the doctrine as a refinement or clarification of the duty owed by a possessor of land for the specific dangerous condition of ice- and snow-covered parking areas, walks and the like. *Wentz v. Pennswood Apartments*, 359 Pa. Super. 1, 5, 518 A.2d 314, 316 (1986). The Supreme Court in *Howell* indicated that assumption of the risk should be applied by the court as part of the duty analysis. *Id.* at 162, 620 A.2d at 1112-13. It seems incongruous to find that no duty exists, the necessary implication of a holding that plaintiff assumed the risk, when the hills and ridges doctrine imposes such a duty on a possessor of land when the three elements listed above are met.

## JURY CHARGE

Defendants next contend that the court erred in failing to charge the jury regarding assumption of the risk. Several appellate cases have found that if the court cannot decide the issue as a matter of law, then the jury is to be charged on comparative negligence and not assumption of the risk. *Howell, supra* at 163, 620 A.2d at 1112-13; *Struble v. Valley Forge Military Academy*, 445 Pa. Super. 224, 232, 665 A.2d 4, 8 (1995); *Giosa v. School District of Philadelphia*, 157 Pa. Commw. 489, 630 A.2d 511 (1993). Based on these cases, the court believes it would have been erroneous to give the charges on assumption of the risk requested by defendants.

## DELAY DAMAGES

Defendants' final assertion of error is that the court incorrectly calculated delay damages. Defendants contend that the court should not have awarded any damages

for the time period between plaintiffs' request for a continuance from the March trial term until this case was actually heard in June. In other words, delay damages should have only been awarded from March 6, 1996 until March 25, 1996. Contrary to defendants' assertions that the delay was caused by plaintiffs, the court found that the case generally was not ready for trial in its order of February 29, 1996. This is evidenced by the docket entries of outstanding motions filed by defendants. For example, on or about February 2, 1996, Gary and Trudy Temple filed a motion to compel answers to a request for production of documents. Defendants joined in this motion. Defendants then filed a motion for summary judgment on or about February 15, 1996. Plaintiffs also filed a motion for a protective order and there were still expert reports which needed to be exchanged.[3] Therefore, the court did not believe the delay was caused by plaintiffs' actions, but by the fact that there were several outstanding motions and the case generally was not ready for trial.

---

3. In fact, plaintiffs' motion for protective order related to high school records of Gene Battin which defendants contended their expert needed.