## McClelland v. Red Rose Rugby Club of Lancaster

*Benjamin Kuby,* for plaintiff.
*Mark T. Riley,* for defendants.

GEORGELIS, *J.,* December 10, 1997—Before me is the defendants' motion for summary judgment, which raises the issue of the plaintiff's assumption of the risk in this negligence action. The motion will be granted.

This lawsuit arises out of an injury which occurred while the plaintiff was playing in a recreational league rugby game on a wet and muddy field. In their motion, the defendants contend that the plaintiff consciously assumed a known risk, thereby defeating his negligence claim.[1]

Summary judgment is proper only "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action . . . ." Pa.R.C.P. no. 1035.2. The party moving for summary judgment carries

---

1. Because I find the plaintiff voluntarily assumed the risk of injury and grant summary judgment on that ground, I do not address the defendants' additional argument that they had no possessory interest in the field and, therefore, had no duty to protect the plaintiff.

the burden of clearly demonstrating that there is no genuine issue of material fact, and the non-moving party must be given the benefit of all favorable inferences which might be reasonably drawn from the evidence, which must be viewed in the light most favorable to the non-moving party. *Graf v. State Farm Insurance Co.,* 352 Pa. Super. 127, 129, 507 A.2d 414, 415 (1986).

In *Mucowski v. Clark,* 404 Pa. Super. 197, 590 A.2d 348 (1991), our Superior Court, in dealing with the doctrine of assumption of the risk and a motion for summary judgment, succinctly stated the following applicable principles of law:

"Voluntary assumption of the risk involves a subjective awareness of the risk inherent in an activity and a willingness to accept it. . . . A plaintiff has voluntarily assumed the risk where he fully understands it and voluntarily chooses to encounter it. . . . For a danger to be known it must not only be known to exist, but it must also be recognized as being dangerous. . . . A plaintiff's knowledge and understanding of the risk, of course, may be shown by circumstantial evidence. . . . However, '[w]hether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude . . . is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine the issue only where reasonable men could not differ as to the conclusion." *Id.* at 201-202, 590 A.2d at 350. (citations omitted)

Armed with these principles for deciding the question of whether the plaintiff assumed the risk, as a matter of law, I now refer to *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), which I believe provides authority to grant the defendants summary judgment. In *Howell,* the plaintiff, who was attending a party at the de-

fendant's house, was injured when a fireworks cannon owned by the defendant exploded. Before the explosion, there was a discussion about the cannon, which the defendant's grandfather had fabricated, and the plaintiff visually inspected the cannon. He then expressed an interest in firing it and went to his house to retrieve two cans of black powder, with some of which the defendant filled the bore of the cannon, as the plaintiff watched and held a flashlight. The defendant ignited the cannon, as the plaintiff stood about 40 feet away.

Our Supreme Court provided a brief history of how it has dealt with the assumption of risk questions in the context of comparative negligence cases. It then noted four perspectives from which the case before it could be analyzed. One involved a duty of care analysis; the second involved a comparative negligence analysis; and the other two involved types of assumption of risk categorized by the Restatement (Second) of Torts. In addressing one of those types, the court quoted the Restatement as follows:

"A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff." *Id.* at 160, 620 A.2d at 1111.

The court then went on to conclude that this type of assumption of the risk can co-exist with comparative negligence. It noted that, in this type of assumption of the risk: "a plaintiff has voluntarily and intelligently

undertaken an activity which he knows to be hazardous in ways which subsequently cause him injury. His choice to undertake this activity may or may not be regarded as negligent. His negligence . . ., however, is not the operative fact; rather, the operative fact is his voluntary choice to encounter the risk." *Id.* at 161, 620 A.2d at 1112.

It noted further that this type of assumption of risk deals with situations not treated by comparative negligence and bars recovery, not because of negligence, but because of the public policy that a person may not recover for injuries which he himself has chosen to risk. The court reasoned that, because it is desirable to preserve this public policy and to remove difficulties in applying this type of assumption of risk and remove the conflicts which exist with comparative negligence, this type of assumption of the risk must be applied by the court as a part of a duty analysis, and not as a part of the case to be determined by the jury. *Id.* at 162, 620 A.2d at 1112. The court concluded that the case before it was one of this type of assumption of risk, that the plaintiff had voluntarily assumed the risk of the cannon firing, that the defendant did not owe him a duty of care and that the plaintiff's negligence claim was barred. *Id.* at 163, 620 A.2d at 1113.

In the case presently before me, plaintiff knew that rugby was a rough, full contact sport which involved tackling and that players could sometimes be injured. McClelland dep. 9-10. He testified that he practiced kicking and running on the field for 10 minutes prior to the start of the game, that the field was ripped up and muddy and that "[i]t looked like it was going to be a wet game on a wet field." McClelland dep. 16, 18, 19.

Clearly, the testimony establishes that the plaintiff was aware of the field conditions that day. He had warmed up on the field prior to the game. McClelland dep. 16. His captain, after a discussion with the referee who noted the wet field conditions, pointed out to his players that the field was wet. Yasso dep. 35. When asked if his captain said anything about the condition of the field, the plaintiff responded that: "He might have said that the field was wet but everyone had been running around on the field so everybody knew that." McClelland dep. 21. Plaintiff described the field as "wet and muddy" with puddles of water in places and depressions gouged in the field from previous play. McClelland dep. 17-18. "It was just all wet and ripped up. There was turf and it was muddy. Like pieces of turf, from cleats and stuff grabbing in it and pulling it out, or just puddles and like the field was wet." McClelland dep. 18.

In an effort to avoid the dismissal of his case, plaintiff argues that, although he knew the field was wet and muddy, he did not knowingly assume the risk of being injured by a concealed hole contained in the playing field. Despite plaintiff's repeated characterization of a "hole" in the field, I can find no testimony from any witness that supports this claim. See Yasso dep. 95;[2] Parson dep. 23;[3] McClelland dep. 17-19, 22, 29.

---

2. "Q: Did you see any hole in the immediate vicinity of where he fell?

"A: Well, there was certainly no holes, like, a bucket-type of hole. When you're playing in the mud, there's a lot of footprints from a foot. That was everywhere.

"Q: Did you see anything deeper or more significant than a footprint in the muddy ground?

"A: I didn't see anything in the field deeper than a footprint."

3. "Q: Did you see the area of ground around the fallen player?

"A: Yes.

Plaintiff's own testimony reflects that he merely stepped in mud:

"Q: All right. If you would, describe the accident itself . . . .

"A: I play out on the wing position. And I had received the ball from someone on my left and was running upfield and had a player coming in on me about 10 feet away or so. And I stopped to make a move and my foot was, stepped in something, and it like sunk there. And as I tried to get, to make a move, it stuck. And I looked down and it is underneath this stuff." McClelland dep. 22.

"Q: The thing that you stepped into, was that a depression or a soft spot that your foot sank into and caused a depression?

"A: It was, it seemed to be some sort of mud or something, you know, like, with like mud and then like water. And I sank and—I ran and stopped and just went down. Now, I don't know what exactly, you know, you want to call that." McClelland dep. 29.

I conclude that all of this testimony establishes that the plaintiff, while trying to change direction to avoid a tackle, found himself stuck in mud, not a hole, and, unable to avoid the opposing player, he was tackled and injured in the process. I believe that, from all of this testimony, reasonable men could not differ as to this conclusion and that, consequently, the issue of the plaintiff's assumption of the risk can be decided as a matter of law. See *Mucowski v. Clark,* 404 Pa. Super. 197, 201-202, 590 A.2d 348, 350 (1991).

---

"Q: Okay, were there any holes anywhere?
"A: No.
"Q: Was his foot stuck in any hole at any time . . . ?
"A: No."

Applying the *Howell v. Clyde,* 553 Pa. 151, 620 A.2d 1107 (1993), principles enunciated above, I conclude that the plaintiff was subjectively aware of the risk inherent in playing rugby, that he fully understood that risk and that he voluntarily decided to participate in the game with the knowledge that the game would involve tackling on a field that was wet and muddy. I hold, as a matter of law, that he assumed the risk, defeating his negligence claim and entitling the defendants to summary judgment. Accordingly, I enter the following:

### ORDER

And now, December 10, 1997, for the reasons stated in the foregoing opinion, the defendants' motion for summary judgment is granted. Judgment is entered in favor of the defendants and against the plaintiff, whose complaint is dismissed.