# McMurdie v. Wyeth

*Robert E. Curran* and *Steven J. Kherkher,* for plaintiff.

*Peter T. Grossi Jr.* and *Michael T. Scott,* for defendant.

BERNSTEIN, *J.,* February 23, 2005—Plaintiff Geri McMurdie was prescribed Pondimin in December of 1996 by her doctor, Dr. Jepson. Ms. McMurdie received Pondimin prescriptions from Dr. Jepson through July 1997. A complaint claiming injury from her use of Pondimin was filed against the pharmaceutical company Wyeth. Although plaintiff has no symptomatology, echocardiograms performed in 2002 revealed aortic regurgitation.

The above captioned case was tried before a jury beginning on September 28, 2004. On November 3, 2004, the jury rendered a verdict for plaintiff McMurdie and against defendant Wyeth in the amount of $780,000. Timely post-verdict motions were filed raising inter alia the preserved claim that plaintiff's claims are barred because plaintiff assumed the risk of injury as a matter of law.[1]

The comparative negligence law[2] enacted in 1976 contains no reference to the doctrine of assumption of risk. Nonetheless, the doctrine's continued existence has been questioned. Although some Supreme Court Justices have twice advocated abolishing the doctrine entirely, a plurality of justices in *Howell v. Clyde,* 533 Pa. 151, 620

---

1. Although the Pondimin involved in this action was prescribed and purchased by Ms. McMurdie, a Utah resident, in Utah, the parties stipulated that Pennsylvania law applied. The defendants did not claim comparative negligence was applicable.

2. 42 Pa.C.S. §7102.

A.2d 1107 (1993), reaffirmed that assumption of risk, as a matter of law, remains a bar to recovery. Assumption of the risk principles remain applicable when a plaintiff's specific decision to accept risk, reasonable or unreasonable as it may be, bars the plaintiff from blaming someone else for her injuries.

In *Staub v. Toy Factory Inc.,* 749 A.2d 522, 527 (Pa. Super. 2000), the Superior Court analyzed the effect of the Supreme Court plurality decision in *Howell* and concluded: "until our Supreme Court or our legislature abrogates assumption of risk in negligence cases, the doctrine remains viable in Pennsylvania." The Superior Court explained: "Our Supreme Court appears to have concluded that in a negligence action, the question whether a litigant has assumed the risk is a question of law as part of the court's duty analysis, and not a matter for jury determination . . . this court concluded that until the Supreme Court adopts clearer standards, assumption of risk should be analyzed according to the lead (plurality) opinion in *Howell.*" [3]

The continued viability of assumption of risk as a defense is grounded in the injustice of a plaintiff claiming that someone else is responsible for an injury after she accepted the risk which unfortunately befell her. Thus, "a plaintiff will not be precluded from recovering except where it is *beyond question* that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries." [4]

---

3. *Staub v. Toy Factory Inc.,* 749 A.2d 522, 526 (Pa. Super. 2000). (citations omitted) (footnote omitted)

4. *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 229, 665 A.2d 4, 6 (1995). (emphasis in original)

Pennsylvania law can be understood by reference to the Restatement of Torts. The doctrine of assumption of risk is set forth in the Restatement (Second) of Torts §496. Section 496A states: "a plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." Comment c.2 to section 496A further states that one meaning of the term "assumption of risk" is "that plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances." The Supreme Court of Pennsylvania has held that comment c.2 refers to those times when a plaintiff has "voluntarily and intelligently undertaken an activity which he knows to be hazardous in ways which subsequently cause him injury." [5]

The court may determine that the defendant was relieved of responsibility to the plaintiff as a matter of law only if "reasonable minds could not disagree that the plaintiff deliberately, and with the awareness of specific risks inherent in the activity, nonetheless engaged in the activity that produced his injury." [6] "Voluntariness is established only when the circumstances manifest a willingness to accept the risk." [7]

After an extensive review of the testimony presented in this unique case, the court concludes that plaintiff knowingly and voluntarily assumed the risks of serious heart damage associated with the use of prescription

---

5. *Howell v. Clyde,* 533 Pa. 151, 161, 620 A.2d 1107, 1112 (1993).
6. *Howell v. Clyde,* 533 Pa. 151, 162, 620 A.2d 1107, 1113 (1993).
7. *Staub v. Toy Factory Inc.,* 749 A.2d 522, 529 (Pa Super. 2000).

Pondimin for weight loss. All evidence of acceptance of risk was presented through plaintiff's own testimony, her signed consent form, and the testimony of her treating physician. Accordingly, after giving plaintiff, as verdict winner, the benefit of all reasonable inferences,[8] plaintiff's claim is barred by the doctrine of assumption of risk as a matter of law and judgment notwithstanding the verdict is hereby entered for defendants.

Plaintiff Geri McMurdie took Pondimin in December 1996, January 1997, March 1997, April 1997, and then again in June and July 1997.[9] The FDA approved Pondimin only: "for use in the management of exogenous obesity as a short-term (a few weeks) adjunct in a regimen of weight reduction based on caloric restriction." The parties agree that her Pondimin prescription was "off label," namely prescribed by her physician beyond the parameters approved for sale of Pondimin by the FDA.

There is nothing improper in "off-label" prescriptions. The Federal Drug Administration regulates the sale of medication by pharmaceutical companies such as defendant Wyeth but does not regulate the medical profession.[10] Off-label use is a widespread practice. The Pennsylvania Supreme Court has said: "[the] . . . mere fact that the FDA has not cleared a product for a particular use does not mean that the product is not in fact suitable for that purpose. . . ."[11] Despite knowing that Pondimin was "not officially approved by the FDA for long-term use," Ms.

8. *The Birth Center v. The St. Paul Companies,* 567 Pa 386, 787 A.2d 376 (2001).

9. McMurdie N.T., 9/30/04 p.m. at 87-93, 126-28.

10. *Southard v. Temple University Hospital,* 565 Pa. 335, 339, 781 A.2d 101, 103 (2001).

11. *Id.* at 107.

McMurdie took Pondimin for six months and acknowledged a willingness to take the medication "for life." She acknowledged a willingness to take Pondimin for life after specifically affirming that the "risks associated with long-term use" were unknown.

The testimony demonstrated that Pondimin use for weight loss became very popular in Utah in the mid nineties.[12] The medical profession so liberally prescribed Pondimin that the drug became classified as a controlled substance under Utah law and the Utah Legislature enacted a specific informed consent statute regulating the prescription of controlled substances for weight reduction or control. This Act further required that physicians obtain the patient's signature on a standard informed consent form prior to prescribing Pondimin. This Act requires that: "prior to initiating treatment the prescribing practitioner shall: . . . (iv) discuss with the patient the possible risks associated with the medication, and have on record an informed consent which clearly documents that the long-term effects of using controlled substances for weight loss or weight control are not known. . . ."[13]

Plaintiff went to Dr. Jepson for treatment for hypertension. She asked her doctor to prescribe Pondimin.[14] Her physician refused because of the serious risks the medication posed because of her medical history and hypertension.[15] Dr. Jepson undoubtedly explained to his patient his reasons for refusing to prescribe Pondimin.

---

12. Plaintiff testified it was a "craze everywhere in Utah." N.T. Plaintiff McMurdie 10/26/04 pg. 53.

13. U.A.C. R156-37-604; Utah Code 58-37-4 VI(d)(iii) (2004).

14. 10/26/04 pgs. 52-53, 60.

15. N.T. 10/26/04, p.m. at 53.

After asking again, and improvement in plaintiff's hypertension, plaintiff prevailed upon her doctor to prescribe Pondimin.[16] In accord with statute, her physician discussed her individual risks in Pondimin use. Plaintiff was well educated about her individual risks. Ms. McMurdie understood that the medication could seriously exacerbate her hypertension.[17] She understood that, because of her history of high blood pressure, use of Pondimin presented a serious risk of stroke or heart attack.[18] She knowingly and voluntarily assumed these risks:

"Q. And informed consent discussed the heart attack, right?

"A. It did.

"Q. So you were already concerned about the risk of hypertension causing you to have a heart attack someday, correct?

"A. Yes.

"Q. Yet you were willing to accept the risk that this drug might cause a heart attack, correct?

"A. I was at that time, yes.

"Q. You were willing to take that drug even though it could make your dangerous hypertension condition worse, correct?

"A. Yes.

"Q. You were willing to take Pondimin even though it could cause—you could have a heart attack?

---

16. N.T. pg. 58 ll. 8-12.
17. McMurdie N.T., 9/26/04 p.m. at 56.
18. McMurdie N.T., 9/26/04 p.m. at 57 ll. 7-22.

"A. That concerned me a little bit, yes.

"Q. But you took the risk?

"A. I did." [19]

She also understood that taking Pondimin could result in her death.

"Q. And you took Pondimin even though you knew that Pondimin might have unknown fatal complications in the future for you, correct?

"A. I did." [20]

She also understood and accepted the risks of "off-label" unapproved use:

"Q. So you were willing to—you were willing to take a drug that you knew was a short-term medication for the long-term?

"A. Yes.

"Q. If the doctor told you that Pondimin could, if taken for more than a few weeks, would cause you long-term unknown complications and risks, would you have taken the drug?

"A. I did." [21]

Ms. McMurdie understood and even accepted undetermined and unknown risks of long-term off-label use:

"Q. And it says right here the risks associated with long-term use is unknown, correct?

"A. Correct.

---

19. McMurdie N.T., 9/26/04 p.m. at 66-67.
20. McMurdie N.T., 9/26/04 p.m. at 68.
21. McMurdie N.T., 9/26/04 p.m. at 67.

"Q. So we've already discussed that. But you were willing to take even unknown serious risks to take this drug, right?

"A. At that time, my doctor and I also felt that my obesity was a big risk also, and that if I could get my weight down maybe it would help with all the other— with the high blood pressure problems and other things of what's going on.

"Q. So you were willing to—you were willing to take a drug that you knew was a short-term medication for the long-term?

"A. Yes."[22]

The statutorily required consent form, signed by Ms. McMurdie on December 27, 1996, was offered into evidence as defense exhibit A-01. This form documented that she knew she was taking Pondimin "off-label," for a period longer than approved by the FDA and further documented that she knew that the risks of long-term use had never been studied. The signed form said: "there are also some risks associated with using these medications. These risks include but are not necessarily limited to: Increased heart rate, increased blood pressure . . . heart attack, especially in people who have heart disease. . . . Most people who are overweight enough to need these medications will need to take them for life, although they are not officially approved by the FDA for long-term use. The risks associated with long-term use is unknown."

Accordingly, before her Utah physician could lawfully prescribe Pondimin for Ms. McMurdie, he was required

---

22. McMurdie N.T., 9/26/04 p.m. at 66-67.

to explain, and prior to filling the prescription plaintiff acknowledged that she knew, that Pondimin carried a risk of side effects which would cause serious adverse heart conditions including heart attack and stroke. Equally importantly, her doctor explained, and she acknowledged, acceptance of unknown risks with long-term use.[23]

Despite knowingly and voluntarily accepting her unique risks of heart attack and stroke, and despite acknowledging that long-term unapproved use carried unknown long-term risks, plaintiff seeks compensation for defendant's failure to specifically identify "valvular regurgitation" as a risk. The Supreme Court explained the policy basis for the continued vitality of assumption of risk: "as a matter of public policy one who chooses to take risks will not then be heard later to complain that he was injured by the risks he chose to take, and will not be permitted to seek money damages from those who might otherwise have been liable . . . the plaintiff may or may not have been negligent in encountering the risk. He is barred from recovery not because of his negligence, but because of the policy that a person may not recover for injuries which he himself has chosen to risk." [24]

---

23. The most significant injury claimed in this lawsuit is the potential for heart valve surgery at some future time. Plaintiff's experts testified that the medical studies reported in medical literature which demonstrate that heart valvopathy due to Pondimin more likely improves rather than deteriorates after cessation of Pondimin use were irrelevant because too short a time period has been studied. Thus, in this lawsuit, plaintiff's experts ground their opinion upon the proposition that the "risks associated with long-term use" are still "unknown" at least to the extent not yet revealed by medical studies. Plaintiff's own experts affirm the unknown risk plaintiff knowingly and voluntarily assumed.

24. *Howell v. Clyde*, 533 Pa. 151, 161, 620 A.2d 1107, 1112 (1993).

Despite the serious risks, it may not have been negligent for Ms. McMurdie to take Pondimin "off-label." This may have been a reasonable and reasoned decision. The defense does not claim plaintiff was negligent.[25] As plaintiff acknowledged in the statutorily prescribed consent form and in testimony at trial: "I believe the weight loss associated with the use of these medications will be beneficial to my health and this benefit outweighs the risks."[26] Whether or not a jury would find that the classic "reasonable man" would have made the same decision is irrelevant in an assumption of the risk analysis. This may have been a reasonable responsible decision for plaintiff to have made in consultation with her doctor. Plaintiff's right to make her own decision, weighing her unique risks and benefits, is respected by the law. A basic principle in our jurisprudence is the long-standing tradition upholding individual liberty and freedom of choice in medical care.

However, having knowingly chosen Pondimin's potential health benefit against the known risk of serious heart injury including stroke; having knowingly chosen Pondimin's potential benefit against the known risk of serious heart injury including heart attack; having knowingly chosen Pondimin's potential benefit when used "off-label" for unapproved long-term use against "unknown" risks, plaintiff may not seek compensation because she had not been specifically told of a risk of "valvular regurgitation."[27]

---

25. No claim of comparative negligence was presented at trial.

26. N.T., 10/26/04 pg. 67 ll. 3-10, defense exhibit A-01.

27. Plaintiff admits in oral argument that assumption of the risk could be a defense as to a claim brought against her physician, but

Under the specific facts of this case, the evidence demonstrates that plaintiff voluntarily assumed the risk of the type of harm which occurred by knowingly and affirmatively entering into a relation with the pharmaceutical defendants involving significant risks of the same nature as the injury she sustained. Plaintiff affirmatively, explicitly, tacitly, and impliedly agreed to relieve the defendant of the significantly lesser risks which actually occurred.

While other significant issues are presented by defendant's post-verdict motions, most significantly whether the expert testimony offered at trial complied with Pennsylvania Rule of Evidence 705, the court's conclusion on assumption of the risk is dispositive and requires that judgment n.o.v. be entered. The court reserves all other issues for a full opinion if necessary, at a later time.

---

claims assumption of risk is inapplicable against a pharmaceutical manufacturer.